688 A.2d 45

Terry Lynn MILLER

v.

Jeffrey Edward BOSLEY.

No. 185, Sept. Term 1996.

Court of Special Appeals of Maryland.

Jan. 30, 1997.

Jeffrey P. Nesson, Westminster, for Appellant.

Samantha Z. Smith (Christy A. McFaul and Hickman, Ulsch & Holniker, P.A., on the brief, Westminster, for appellee Bosley, W. Bradley Bauhof, on the brief, Westminster, for appellee, Lorrie Dell) for Appellees.

Argued before FISCHER, HARRELL and HOLLANDER, JJ.

HARRELL, Judge.

Terry Lynn Miller, defendant below, appeals an order granting *pendente lite* custody[1] of her daughter to Lori Sue Dell, the child's paternal aunt. Mrs. Dell was not a party to the underlying custody action filed by the child's father, Jeffrey Edward Bosley. The trial judge, based upon a report and recommendation of a master, issued his order establishing *pendente lite* custody and visitation for the minor child. The trial judge ordered an immediate transfer of custody pursuant to Rule S74A, now codified as Md. Rule 9–207[2]. Ms. Miller appeals this interlocutory *pendente lite* order pursuant to Md. Cts. & Jud. Proc.Code Ann. § 12–303(3)(x). We shall vacate that order and remand.

## *FACTS*

On 15 July 1991, the parties' daughter was born. The parties' tumultuous relationship began in May 1989 and ended in May of 1995. Appellee initiated the judiciary's involvement in the custody of his daughter by filing his 19 February 1993 Complaint for Immediate Custody and Motion for Emergency Hearing/*Ex Parte* Relief. A hearing ensued that same day. Ms. Miller appeared at that hearing *pro se* and Mr. Bosley appeared with assistance of counsel. The court exercised appropriate jurisdiction over the matter, ordered that custody was to remain with the mother, and held its final determina-

---

**1.** We have consistently held that it is beyond cavil that a circuit court has the authority to award custody of children *pendente lite*. *E.g., Stach v. Stach,* 83 Md.App. 36, 573 A.2d 409 (1990).

**2.** All references hereinafter to this rule shall be to S74A.

tion regarding custody in abeyance until it received a report from the Department of Social Services.

The custody portion of this matter[3] thereafter remained dormant for many months. As appellee admits in his brief, this case is one plagued by delay. Postponements, changes of attorneys, and at least one attempted reconciliation between the parties, delayed further judicial consideration of custody until 9 November 1995. A master, pursuant to Rule S74A(a)(1)(F)[4], was charged with conducting a hearing regarding the custody of the child on that date. At the hearing, apparently a total of thirteen witnesses testified concerning the parents' fitness to care for the child. For reasons we shall address more fully below, the record does not contain a transcript of that hearing.

Following the master's hearing, Mrs. Dell petitioned the court to be named a party to the action. We found no indication in the record that her request was granted. The master issued his report, and mailed copies to the parties, on 28 December 1995. The portion of that report purporting to reveal the master's findings and recommendations is reproduced below.

I find as a fact that the Plaintiff, age 28 and the Defendant, age 25, are the biological parents of [the child] who was born on [15 July 1991]. These parties had a relationship from May, 1989 until the end of May, 1995; in this relation-

---

**3.** Still outstanding is an action, filed by the State as assignee, for child support.

**4.** The pertinent authority to refer family law matters to a master stems from the following:

**RULE S74A. Referral of Matters to Masters.**

a. Referral.

(1) As of course.

In a court having a master appointed for the purpose ... the clerk shall refer the following hearings arising under this Subtitle to the master as of course when a hearing has been requested or is required by law:

\*     \*     \*     \*     \*     \*

(F) ... Custody or visitation with children including pendente lite relief, [and] modification of an existing order or judgment....

ship the parties lived together at various places and they often separated and for periods of time did not live together at all. Little, if anything else, can be stated as a fact.

Little faith can be put in the Defendant's testimony; she is contradicted by her own witnesses. During much of the parties' relationship, the Defendant appears not to have worked either at a job or as a parent. There is an abundance of testimony supporting the conclusion that she was content to let others take care of the child while she apparently took it easy and did nothing. It is certain that she used bad vulgar language in the presence of the child because this is testified to by her own witnesses as well as witnesses for the Plaintiff. As to her lack of cleanliness and lack of attention to the child, the testimony is contradictory. The Defendant denies having used drugs since the birth of the child but other witnesses testify clearly that she has used drugs since then including up to the present time. Interestingly enough, the Defendant admitted that on [1 June 1995] she wrote a letter to the Plaintiff attempting to restore visitation between him and the child and turned around on [14 June 1995] and applied for a domestic violence Order. Now at the end of May, the 29th according to his testimony and the 31st according to her testimony, the parties were discussing their pending marriage on [11 November 1995] when the Defendant abruptly left the place where the parties were living. There is no testimony to explain why she applied for a domestic violence Order and it apparently had little validity for it was dismissed. These are among the reasons we have concluded that the Defendant is not a credible witness.

The Plaintiff's track record is not as bad as the Defendant's but it too leaves much to be desired. He has two children by another woman and her testimony is that he pays no attention to them. Whether he presently uses drugs is also uncertain. There is nothing in his case to lead us to believe that he is truly dedicated to this child. He testified that he has not given the Defendant money for child support because he fears she will spend it on herself.

His relationships with women seem to be solely based by his sexual needs with no real sense of commitment to either woman or the child or children of his that she bears.

Faced with the dilemma of not knowing who to believe and doubting the responsibility of both parents, we believe, on a *pendente lite* basis, that the best interests of this child will be served by granting custody to the Plaintiff's sister, Lorri[e] Sue Dell. She appears to be sincerely interested in the welfare of this child and expressed under oath, in response to a question by the master, that she would be willing to raise this child. Moreover, she testified that her husband has a responsible job and that he too would be willing to take over the care and custody of this child.

Finally, we suggest to the Court that a very thorough and complete investigation be conducted in order to better understand the nature and desires of the biological parents of this child.

■ Md. Rule S74A incorporates the use of masters in domestic relations matters. Under that Rule, and Md. Rule 2–541 [5], masters have the power to issue subpoenas, administer oaths to witnesses, rule on admissibility of evidence, examine witnesses, conduct a hearing, recommend sanctions to the court, and make findings of fact and conclusions of law.

■ A review of the master's report, however, reveals that he found and recommended very little. We paraphrase his factual findings and recommendations below.

— The parties are the child's biological parents.

— The parties had a relationship.

— The Defendant [appellant mother] is not credible and used vulgar language in the child's presence.

— The Plaintiff [appellee father] is not much better.

---

**5.** This is the rule generally governing the conduct and employment of masters. Although Md. Rule 2–541 applies to all master's proceedings, domestic relations matters are more specifically controlled by Md. Rule S74A. *Lemley v. Lemley,* 102 Md.App. 266, 649 A.2d 1119 (1994).

— The best interests of the child are served by granting *pendente lite* custody to Ms. Dell. [This finding is not a "first-level" fact.[6]]

— The court should investigate the nature and desires of the child's parents.

The master's report was devoid of any factual finding indicating that an immediate transfer of custody was necessary or even warranted. The master, however, attached a proposed order, which included, *inter alia*, language recommending that custody be transferred to Mrs. Dell immediately, pursuant to Md. Rule S74A(f)(2).

The trial judge held a hearing, as required by Md. Rule S74A(f)(2), on 4 January 1996. After oral argument, the judge signed that same day the proposed order, altering only the visitation granted therein. The judge and the parties continued on the record of the 4 January hearing to discuss what the deadline would be for filing written exceptions to the master's report. After considering the time computation provisions of Md. Rule 1–203, it was determined that the deadline would fall during the following week. The deadline passed without a filing of exceptions[7] and appellant noted this appeal of the judge's 4 January 1996 order on 31 January 1996.

---

**6.** Neither the trial judge nor this Court need accord deference to this "second-level" finding or recommendation. *See Cousin v. Cousin,* 97 Md.App. 506, 514, 631 A.2d 119 (1993); *Levitt v. Levitt,* 79 Md.App. 394, 398, 556 A.2d 1162, *cert. denied,* 316 Md. 549, 560 A.2d 1118 (1989).

**7.** At oral argument before this Court, appellant indicated that her rationale for failing to file exceptions to the Master's report was financially based. Simply put, appellant lacked the resources to produce the transcript of the master's hearing. Appellant did not argue before the court that, as an indigent, she was entitled to have the transcript produced for free or for a reduced cost. Although such a service may be guaranteed in child access cases under both the Federal and Maryland Constitutions, we need not, and therefore do not, decide so here. We acknowledge that a Fourteenth Amendment due process argument may have been successful in light of the Supreme Court's decision in *M.L.B. v. S.L.J.,* —— U.S. ——, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). A state constitutional due process claim may have been similarly successful. *See, e.g., Beeman v. Department of Health and*

Appellant claims that the judge erroneously deprived her of custody of her daughter. Her appeal is founded on the judge's application of Md. Rule S74A(f)(2) to effect an immediate transfer of custody and the lack of an adequate basis for the ultimate award of *pendente lite* custody to Mrs. Dell.

## ISSUES

We perceive that appellant raised the following issues, rephrased below, on appeal.[8]

I. Was the judge's disposition of the matter authorized under any provision of Md. Rule S74A(f)?

II. Did the judge properly award *pendente lite* custody to a third party based upon the master's report and recommendations?

## ANALYSIS

### Preface

■ Before we address the merits of this case, we must comment on the documentation, or lack thereof, provided to this panel by the parties. This is an expedited appeal of a child access case governed by Md. Rule 8–207(b) (applying "to every appeal to the Court of Special Appeals . . . contesting a judgment granting, denying, or establishing custody of or

---

*Mental Hygiene*, 107 Md.App. 122, 666 A.2d 1314 (1995) (Due process clause of Maryland Declaration of Rights and due process clause of Fourteenth Amendment have same meaning and are to be read *in pari materia*.)

We note, however, that *M.L.B. v. S.L.J.* was not decided until after the hearings in the instant case and was not available to counsel or the trial judge.

**8.** Appellee asserts that appellant's failure to file exceptions forecloses her objection on appeal to the master's recommendations as a foundation justifying the court's 4 January 1996 order. We perceive that appellant assigns error not to the master, but to the trial judge in his exercise of his judicial responsibilities. Although exceptions are the proper vehicle for review of the master's findings, this appeal may properly consider the propriety of the judge's actions. Consequently, we shall consider here only such of appellant's arguments as can be properly reviewed on the abbreviated state of this record.

visitation with a minor child"). The parties did not file an agreed statement of the case. Without an agreed statement, appellant was not excused from filing an adequate record extract pursuant to Md. Rule 8–501(a). Certain excerpts from the record were included as an appendix to appellant's brief. The appendix did not include copies of the order appealed from (specifically required by Md. Rule 8–501(c)), docket entries, or a custody ruling previously entered in this matter, however. Although we ordinarily will not dismiss an appeal for failure to file a proper record extract, we could direct the filing of an adequate extract pursuant to Md. Rule 8–501(m). We did not do so in this matter in the interests of justice and mindful of the expedited status of this appeal, deciding instead to conduct our own review of the record. We note that we are never required to "ferret out" from the record evidence omitted from the extract. *Hamilos v. Hamilos,* 52 Md.App. 488, 497 n. 3, 450 A.2d 1316 (1982); *Eldwick Homes Ass'n v. Pitt,* 36 Md.App. 211, 373 A.2d 957, *cert. denied,* 281 Md. 736, 741 (1977). Our decision to do so in this case stems from our concern for child custody cases generally and especially those in which extraordinary circumstances are asserted as a basis for immediate change of custody. Our failure to sanction the parties should not be construed as condonation of these serious omissions.

## *I.*

Before delving into the facts, such as they are, we shall state and discuss those portions of Md. Rule S74A integral to our analysis.

**Rule S74A.   Referral of Matters to Masters.**

*       *       *       *       *       *

c.   *Findings and Recommendations.*

*       *       *       *       *       *

The master shall notify each party of the master's recommendations, either on the record at the conclusion of the hearing or by written notice served pursuant to Rule 1–321....

d. *Exceptions.*

Within five days after recommendations are placed on the record or served pursuant to section c of this Rule, a party may file exceptions with the clerk. Within that period or within three days after service of the first exceptions, whichever is later, any other party may file exceptions. Exceptions shall be in writing and shall set forth the asserted error with particularity. Any matter not specifically set forth in exceptions is waived unless the court finds that justice requires otherwise.

\*　　\*　　\*　　\*　　\*　　\*

f. *Entry of Orders*

(1) In General.

Except as provided in subsections (2) and (3) of this section.

(A) the court shall not direct entry of an order or judgment based upon the master's recommendations until the expiration of the time for filing exceptions, and if exceptions are timely filed, until the court rules on the exceptions; and

(B) if exceptions are not timely filed, the court may direct the entry of the order or judgment as recommended by the master.

(2) Immediate Orders as to Pendente Lite Relief

Upon a finding by a master that extraordinary circumstances exist and a recommendation by the master that an order concerning pendente lite relief be entered immediately, the court may direct the entry of an immediate order after reviewing the file and any exhibits, reviewing the master's findings and recommendations, and affording the parties an opportunity for oral argument. The court may accept, reject, or modify the master's recommendations. An order entered under this subsection remains subject to a later determination by the court on exceptions.

(3) Contempt Orders.

On the recommendation by the master that an individual be found in contempt, the court may hold a hearing and direct the entry of an order at any time.

■ We recently interpreted certain portions, including Section (d), of Md. Rule S74A in *Morales v. Morales,* 111 Md.App. 628, 683 A.2d 1124 (1996). In that case, we construed the Rule in accordance with the plain meaning of its language. *Id.* at 632, 683 A.2d 1124. "When interpreting a rule the same standards and principles apply as those utilized in interpreting a statute." *Id.* at 632, 683 A.2d 1124 (quoting *Stach v. Stach,* 83 Md.App. 36, 40, 573 A.2d 409 (1990)). We shall not deviate from this approach in the instant case as we are able to interpret the Rule consistent with the plain meaning of its language.

■ Preliminarily, we note that Section (d) applies to all matters referred to a master pursuant to Md. Rule S74A. The general effect of exceptions is that "any matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise". This waiver applies to all cases, independent of the entry of the order under Section (f). In short, in all cases lacking timely exceptions, any claim that the master's findings of fact were clearly erroneous is waived. Because no exceptions were filed in the instant case and to the extent that the master made first-level findings of fact, we, the chancellor, and the parties must accept those facts as established for purposes of the pertinent proceedings leading to this appeal. In other words, if appellant's sole basis for appeal was that the master's factual findings, such as they are, were clearly erroneous, her failure to file exceptions would have proven fatal to such an argument. We perceive, however, that appellant, accepting as she must that the master's first-level fact finding is unassailable here, assigns error to the trial judge in the exercise of his independent judgment as to the propriety of his disposition of the case from those facts. We conclude that, under the circumstances in this case, we may review the chancellor' actions.

■ Section (f) specifically limits the power of the trial judge to enter an order following a master's hearing. The trial judge purported to issue his opinion under subsection (2) of that section. Appellee has not argued that the judge's

order was sustainable on any other basis. Accordingly, we limit our analysis to that subsection and do not consider whether the chancellor's disposition would have been proper under the other provisions of Md. Rule S74A(f). Md. Rule S74A(f)(2) allows the judge to act immediately if the master finds "extraordinary circumstances" and recommends immediate disposition. As we noted in the fact section of this opinion, the master did not make the requisite finding that extraordinary circumstances exist, although he did recommend an immediate change of custody. We conclude that the master's failure to predicate his recommendation on a finding of "extraordinary circumstances" prevents disposition under Md. Rule S74A(f)(2). In so concluding, we note that the lengthy delay of fifty days between the master's hearing and the issuance of his report supports a reasonable inference that there was no immediate threat to the child constituting an extraordinary circumstance. This is a further reason why the master's omission of any clear explanation of what could have been an extraordinary circumstance prevented the chancellor from relying on the master's report as a predicate for his action to order an immediate change in custody.

## *II.*

We further determine that, even had extraordinary circumstances been discernable from the report of the master, clear error still existed. We explain.

■ Generally, the court stands as a guardian to all children, and may take action to protect and advance their welfare and interests. *See Boothe v. Boothe,* 56 Md.App. 1, 6–7, 466 A.2d 58 (1983). Such action can include an award to a third party, even in the absence of abandonment or neglect, if that award is in the best interests of the child. *See Thumma v. Hartsook,* 239 Md. 38, 210 A.2d 151 (1965) (holding that circuit court could award temporary custody to the Montgomery County Welfare Board even though the Welfare Board was not a party to the action); *Dietrich v. Anderson,* 185 Md. 103, 118, 43 A.2d 186 (1945); *Kartman v. Kartman,* 163 Md. 19, 22, 161 A. 269 (1932); *see also Tedesco v. Tedesco,* 111 Md.App.

648, 656, 683 A.2d 1133 (1996). In the instant case, the custody issue was referred to the master pursuant to Md. Rule S74A(a)(1)(F). Because the issue of custody was before the court, including the possible award of *pendente lite* custody to a third party, the entire issue was also before the master.

▬▬▬ The master recommended that relief be granted immediately under Md. Rule S74A(f)(2). That Rule requires that the judge conduct a hearing before granting the order based on the master's recommendations. Our research uncovered no precedent indicating what the proper standard of review to be used by the chancellor in a Md. Rule S74A(f)(2) hearing should be. A judge's role in reviewing a master's report and recommendations has been addressed in the context of a review based on the parties' exceptions. Our mission is, therefore, to divine the judge's role at the S74A(f)(2) hearing in light of the similar function served by the judge at an exceptions hearing.[9]

▬▬▬ A judge may enter an immediate order concerning *pendente lite relief* only "after reviewing the file and any exhibits, reviewing the master's findings and recommendations, and affording the parties an opportunity for oral argument. The court may accept, reject, or modify the master's recommendations." Md. Rule S74A(f)(2). The plain meaning of that Rule places the entire propriety of the *pendente lite* award before the court at the hearing. In other words, the scope of the S74A(f)(2) hearing is not limited to a determination of the propriety of immediate relief. We conclude that a S74A(f)(2) hearing requires that the judge intervene and

---

**9.** When neither party files exceptions or the master does not recommend immediate relief, neither the correctness nor the sufficiency of the master's findings are placed before the chancellor. Therefore, we could not review them on appeal. Md. Rule 8–131(a). Ordinarily, the appellate court will not decide any issue unless it plainly appears to have been raised in and decided by the trial court. If, however, either party excepts, or the master recommends immediate relief, the rules clearly contemplate invocation of the chancellor's independent judgment.

determine the correctness of the entire master's recommendation.

A transcript of the master's hearing will usually not be available at a S74A(f)(2) hearing due to the immediacy of the chancellor's hearing necessitated by the recommended relief. The exceptions hearing procedures, like S74A(f)(2), contemplate review of the file and exhibits before the master, but ordinarily also require that the excepting party provide a transcript of the master's hearing. Md. Rule S74A(e); Md. Rule 2–541(h)(2). The lack of a transcript of the master's hearing at the S74A(f)(2) hearing before the judge profoundly limits the extent of the chancellor's review.

We have previously assigned error when a judge, reviewing a master's report, fails to exercise his or her independent judgment.

> Litigants in all judicial proceedings are entitled to have their cause determined ultimately by a duly qualified judge of a court of competent jurisdiction. While the system of resorting to Masters is one of long standing and undoubtedly has salutary effects resulting in the more expeditious dispatch of the judicial process, the system cannot supplant the ultimate role of judges in the judicial process itself.

*See Ellis v. Ellis,* 19 Md.App. 361, 365, 311 A.2d 428 (1973) (internal citations omitted). Thus, once the judge is called into the fray, he or she may not abdicate his or her responsibility to review the order and insure that a sufficient basis for the recommended order exists.

Despite the lack of a transcript [10], the standard of review at S74A(f)(2) hearings is the same as that governing an exceptions hearing in many ways. When exceptions to the report and recommendations of a master are filed, the chancellor must "exercise independent judgment to determine the proper result." *Domingues v. Johnson,* 323 Md. 486, 496, 593

---

**10.** In virtually every case, no transcript will be available at the S74A(f)(2) hearing. If one were available, however, we conclude that the trial judge should consider it and conduct the hearing using the same standard of review as an exceptions hearing.

A.2d 1133 (1991); *see also Lemley v. Lemley,* 102 Md.App. 266, 277, 649 A.2d 1119 (1994). After an exceptions review, a trial judge may not approve a master's recommended order based upon a finding that the recommendations contained in that order were not clearly erroneous. *Domingues,* 323 Md. at 490, 593 A.2d 1133; *Lemley,* 102 Md.App. at 279, 649 A.2d 1119. Instead, the court must subject the master's first-level fact finding to a clearly erroneous standard. The chancellor is then charged with exercising independent judgment concerning the proper conclusion to be reached from those well found facts. *Domingues,* 323 Md. at 490, 593 A.2d 1133. Simply put, the trial judge may not blindly accept the master's recommendations.

Not all of these standards, however, can apply to the S74A(f)(2) hearing. A chancellor's ability to determine whether the master's factual findings are clearly erroneous evaporates in the face of the lack of a transcript. Of course, requiring preparation of transcript would delay the immediate relief contemplated by S74A(f)(2). We construe that Rule in light of the presumption that its drafters did not intend to create a useless rule. *See Swarthmore v. Kaestner,* 258 Md. 517, 525–27, 266 A.2d 341 (1970); *First Nat'l Bank v. Shpritz,* 63 Md.App. 623, 635, 493 A.2d 410, *cert denied,* 304 Md. 297, 498 A.2d 1184 (1985). For the purposes of a S74A(f)(2) hearing, we conclude that a trial judge, without the benefit of a transcript, must accept the sufficiency of the master's first-level factual findings.

This, however, does not unburden the chancellor of his or her obligation to exercise independent judgment to insure that the proper conclusion is reached based on those necessarily accepted facts. The chancellor, pursuant to S74A(f)(2), must review the file, any exhibits, the master's findings and recommendations, and hear oral argument. In this case, the trial judge's only rationale for signing the *pendente lite* order, at least as to the immediate custody change recommended by the master, was the following:

I take into consideration the Master's experience in such matters, his ability to observe the witnesses, to listen to their testimony and to make a recommendation such as he did.

Under these circumstances, the trial judge failed to exercise his independent judgment in this regard, thereby abdicating his essential role.

              The trial judge should have noticed from the court file, the master's report, and oral argument that the master did not interject into the proceedings the possibility of a *pendente lite* custody award to Mrs. Dell until well into the hearing.[11] Moreover, from a review of the master's report as to the substance of Mrs. Dell's testimony as a witness for appellee (as well as appellee's and his other witnesses' testimony characterized there), the question of whether Mrs. Dell was a fit and proper person to have custody, whether her home environment was suitable, and other criteria normally examined in a custody change context (and especially where a person other than a biological parent is being considered as custodian) appear to have been given short evidentiary shrift. The master's impressions of Mrs. Dell in this regard ("sincerely interested in the welfare of this child", "willing to raise the child", "her husband has a responsible job", and "willing to take over the care and custody of this child") further demonstrate an incomplete consideration of all of the usual criteria before choosing such a custody transfer. The master also made no factual finding regarding the dangers faced by the child should she remain in appellant's custody. In fact, the master failed to find anything more damaging of an immediate chronology than Ms. Miller's use of vulgar language in front of the child. Although appellant's conduct in this regard, if true,

---

**11.** Appellant's witnesses apparently testified first. There were seven of them. Appellee's witnesses, of which there were five, testified next. Mrs. Dell was appellee's second witness and the ninth overall. Apparently, after the parties had examined Mrs. Dell, the master inquired if she would be willing to have custody of the child. This was the first and only time this subject was broached at the master's hearing, according to his report.

will gain no applause in any forum we know of, the master certainly did not find first-level facts sufficient to overcome the presumption [12] in favor of the natural parent. As such, the trial judge could not properly order custody awarded to Mrs. Dell based upon the master's factual findings.

The trial judge could have awarded custody to Ms. Miller, held a *de novo* hearing regarding the fitness of Mrs. Dell, Mr. Bosley, and Ms. Miller [13], or again referred the matter to the master framed as a third-party custody case. This would have sufficiently placed the parties on notice that such an award was contemplated and allowed appropriate evidence to be adduced. We decide that the trial judge was clearly erroneous in his award of *pendente lite* custody to Mrs. Dell irrespective of the lack of an adequate factual predicate justifying the immediacy of the relief granted.

In closing, we express our concern for the child at the center of this case. Our mandate vacates the order of the trial court, requiring, absent a contrary agreement between the parties, return of the child to Ms. Miller pending the result of further proceedings. [14] The result of those proceed-

---

**12.** In the instant case, we presume, as we must, that the child's welfare is "best served in the care and custody of its natural parents rather than a third party." *Tedesco v. Tedesco*, 111 Md.App. 648, 656, 683 A.2d 1133 (1996) (quoting *Newkirk v. Newkirk*, 73 Md.App. 588, 593, 535 A.2d 947 (1988)). "The presumption is a rebuttable one and can be overcome by evidence that the parent is unfit to have custody, or that there are exceptional circumstances making custody detrimental to the best interests of the child." *Tedesco*, 111 Md.App. at 656, 683 A.2d 1133; *see Ross v. Hoffman*, 280 Md. 172, 178–79, 372 A.2d 582 (1977); *Trenton v. Christ*, 216 Md. 418, 420, 140 A.2d 660 (1958).

**13.** A trial court has broad discretion under the rules and the common law to conduct a *de novo* hearing in order to reassess the credibility of witnesses and more fully develop the factual predicate for its judgment. *See Best v. Best*, 93 Md.App. 644, 613 A.2d 1043 (1992).

**14.** In furtherance of the best interests of the child, we note that there is no reason why, pending the docketing of the mandate in this case by the clerk of the circuit court, the parties and the circuit court cannot engage in such preparatory matters (consistent with this opinion) so as to be in a position to act promptly in resolving this questioned custody

ings may conceivably be another award of custody to Mrs. Dell, or even the local Department of Social Services, on a proper record, spawning yet another emotionally taxing transfer of custody. Although we cannot compel the parties to do so, we expect that all parties will act consistent with the emotional well-being of the child during any such transfers.

Finally, we address the possibility that counsel for the child be appointed. Of course, such an appointment of counsel is discretionary. Md. Fam. Law Code Ann. § 1–202 states:

> In an action in which custody, visitation rights, or the amount of support of a minor child is contested, the Court *may:* (1) appoint to represent the minor child counsel who may not represent any party to the action; and (2) impose against either or both parents counsel fees.

(Emphasis added). There are three roles that a court-appointed attorney can fulfill. He or she can exercise certain waivers of the child's privileges, act as a *guardian ad litem,* and serve as the court's investigator. *Leary v. Leary,* 97 Md.App. 26, 40, 627 A.2d 30 (1993). The extent of the task assigned to the child's counsel is dictated by the court. *See Id.* at 45, 627 A.2d 30; *Levitt v. Levitt,* 79 Md.App. 394, 403, 556 A.2d 1162, *cert. denied,* 316 Md. 549, 560 A.2d 1118 (1989). We do not seek to usurp the judge's discretion to decide whether to appoint counsel for the child, or define the scope of representation. That is clearly within his purview, subject, of course, to our review on appeal. We, nonetheless, strongly recommend that the judge consider making such an appointment.

**CUSTODY ORDER OF THE CIRCUIT COURT FOR CARROLL COUNTY, DATED 4 JANUARY 1996, VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.**

---

situation. *See Lemley v. Lemley,* 109 Md.App. 620, 629–30, 675 A.2d 596, *cert. denied,* 343 Md. 679, 684 A.2d 454 (1996).