Circuit Court for Anne Arundel County
Case No. 02-P-13-9197

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 901

September Term, 2016

_____

RICARDO DILLON

v.

LYNITA MILLER, *et al.*

_____

Graeff,
Friedman,
Raker, Irma S.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Friedman, J.

_____

Filed:  September 29, 2017

This appeal concerns Appellant Ricardo Dillon's failure to pay child support to Appellee Lynita Miller, for their daughter S. The Circuit Court for Anne Arundel County, based on the Report and Recommendations of a family law Magistrate, found that Dillon was voluntarily impoverished and imputed income to him at a level consistent with him earning the federal minimum wage.

Dillon raises two challenges to the circuit court's ruling. Dillon argues that the circuit court erred: (1) when it accepted facts found by the Magistrate; and (2) when it found that he was voluntarily impoverished and imputed minimum wage income to him. For the reasons explained below, we affirm the circuit court.

## BACKGROUND

Ricardo Dillon and Lynita Miller are the parents of now 6-year-old S. Dillon and Miller were never married and never resided in the same household. S has lived exclusively with Miller since birth.

Miller, through the Anne Arundel County Office of Child Support Enforcement, filed a Complaint for Support. A Magistrate in the Circuit Court for Anne Arundel County held a hearing. After taking testimony from both Dillon and Miller, the Magistrate recommended that Dillon pay child support to Miller in the amount of $535 per month. Dillon then filed timely exceptions to the Report and Recommendations of the Magistrate. The Circuit Court for Anne Arundel County granted Dillon's exceptions and remanded the case to the Magistrate to make further factual findings. Specifically, the circuit court

directed the Magistrate to allow Dillon to cross-examine Miller, and also permitted the Magistrate to receive additional testimony from both parties at his discretion.

The Magistrate conducted the second hearing in June 2016. Both Dillon and Miller testified and were subject to cross-examination. Importantly, Dillon testified at this second hearing that he had completed high school in Jamaica, that he had worked in construction in Jamaica, and that he had no mental or physical limitations that prevented him from working. He also testified that he was not permitted to work in the United States because of his immigration status and, therefore, found it difficult to obtain consistent work. He testified, though, that he "[tries] to get work when [he] can." He testified, somewhat unclearly, that he could not return to Jamaica to work because it may affect his immigration status and visa application. Finally, he testified that he is married to another woman in the United States, that in addition to S—who Dillon has with Miller—he also has three other children from three different women, and that his wife and family members help support him and his three other children.

The Magistrate, in his Report and Recommendations, made the following findings of fact:

> (1) Miller is employed full-time and earns an annual salary of $47,000—or $3,917 per month. She incurs daycare expenses of about $135 per week. Her portion of the health insurance for S provided by her employer is $379.90 per month.
>
> (2) Dillon is a citizen of Jamaica "who has been in and out of the United States." Dillon claims that he is not

permitted to work in the United States because he does not have a green card, a social security number, or work authorization.[1] Dillon states that if he works without authorization he may be deported and not permitted to return to the United States.

(3)     Dillon is married to a United States citizen, with whom he has a young child, so that he could remain in the United States. Dillon's wife filed an application in April 2014, which was still pending in June 2016, "for him to remain in [the United States] and be able to work here." The only evidence provided by Dillon of his immigration status was a courtesy copy of an immigration form.[2]

(4)     Dillon is currently supported by his wife and other family members.

(5)     Dillon also pays child support, under a court order in Montgomery County in the amount of $253 per month, to the mother of another child born in 2011.[3]

---

[1] Miller testified to the contrary—that Dillon regularly performed construction work and actually had a green card.

[2] This immigration form was not helpful. Specifically, the form was a courtesy copy of United States Citizenship and Immigration Services ("USCIS") Form I-797 Notice of Action that was received by USCIS on April 11, 2014. Dillon's wife was named as the Petitioner and Dillon was listed as the beneficiary. The copy introduced at the hearing, however, stated, "[t]his courtesy copy may not be used in lieu of official notification to demonstrate the filing or processing actions taken on this case." Thus, Dillon's immigration status and the possible repercussions of his return to Jamaica to work remain unclear.

[3] Testimony at the second hearing established that Dillon also has another child, for whose benefit he voluntarily pays about $200 per month towards buying groceries. In sum, in addition to S who Dillon has with Miller, Dillon also has a child with his current wife, and two other children from two other women.

The Magistrate also specifically found that Dillon's testimony that "he had no income at all from income earning sources" was not credible. Based on these findings of fact, the Magistrate recommended a finding that Dillon was voluntarily impoverished and imputed income to him for calculation of his child support obligation commensurate with him earning the federal minimum wage. The Magistrate also decided that extraordinary circumstances existed, under Maryland Rule 9-208(h)(2),[4] to justify the entry of an immediate order for child support backdated to October 1, 2015.

The circuit court agreed with the Magistrate that extraordinary circumstances existed to justify the entry of an immediate order. The circuit court, therefore, entered its Order—ratifying and affirming the facts found by the Magistrate, and granting Miller's Complaint for Support in the amount of $528 per month[5]—on the same day that the

---

[4] That Rule states in pertinent part:

> If a magistrate finds that extraordinary circumstances exist and recommends that an order be entered immediately, the court shall review the file and any exhibits and the magistrate's findings and recommendations and shall afford the parties an opportunity for oral argument. The court may accept, reject, or modify the magistrate's recommendations and issue an immediate order. An order entered under this subsection remains subject to a later determination by the court on exceptions.

Md. Rule 9-208(h)(2).

[5] The circuit court concluded that, consistent with the Child Support Guidelines Worksheet, Dillon owed a base amount of $423 per month in child support payments. Because Dillon's child support obligation was backdated to October 1, 2015, he was also found to owe $3,807 in arrears. As a result, the circuit court concluded that Dillon should

4

Magistrate released his Report and Recommendations. This time, Dillon did not file exceptions to the Magistrate's Report and Recommendations. Dillon, however, noted a timely appeal to this Court.

## ANALYSIS

On appeal, Dillon makes two challenges, based on the Report and Recommendations of the Magistrate, to the circuit court's ruling. *First*, Dillon argues that the circuit court erred when it accepted facts found by the Magistrate regarding the amount that he should pay for child support and regarding the amount that Miller paid for medical insurance. *Second*, Dillon argues that the circuit court erred when it found that he was voluntarily impoverished and imputed income to him. We will address each of Dillon's contentions in turn.

## I. Factual challenges

As previously noted, although Dillon filed exceptions to the Magistrate's first Report and Recommendations, he failed to file exceptions to the Magistrate's second Report and Recommendations. The effect of Dillon's failure to file exceptions this time is fatal to his challenges to the facts found by the Magistrate that were accepted by the circuit court.

---

pay an extra $105 per month, for a total payment of $528 per month, until the arrears are satisfied.

Maryland Rule 9-208 governs proceedings before a Magistrate (and any claims that there were errors in such proceedings). The entry of the immediate order by the Magistrate presents a distinct procedural situation. The Rules normally provide a litigant who is dissatisfied with the Magistrate's recommendations 10 days within which to file exceptions after the issuance of the Magistrate's Report and Recommendations. *See* Md. Rule 9-208(f) ("Within ten days after recommendations are placed on the record … a party may file exceptions with the clerk."). The circuit court cannot enter an order based on the Magistrate's Report and Recommendations until the time for filing exceptions has passed, and if exceptions are filed on time, until the exceptions are ruled on by the circuit court. Md. Rule 9-208(h)(1)(A) ("[T]he court shall not direct the entry of an order or judgment based upon the magistrate's recommendations until the expiration of the time for filing exceptions, and, if exceptions are timely filed, until the court rules on the exceptions.").

When, however, the Magistrate finds that extraordinary circumstances exist to justify the entry of an immediate order, as the Magistrate did in this case, the circuit court may enter an order *before* the time for filing exceptions has passed. *See* Md. Rule 9-208(h)(2) ("If a magistrate finds that extraordinary circumstances exist and recommends that an order be entered immediately, the court shall review the file and any exhibits and the magistrate's findings and recommendations and shall afford the parties an opportunity for oral argument. The court may accept, reject, or modify the magistrate's recommendations and issue an immediate order."). When this happens, a litigant can then

6

file exceptions, which the circuit court would have to consider, *after* the entry of the order from the circuit court. *See id.* ("An order entered under this subsection remains subject to a later determination by the court on exceptions."). Although filing exceptions after the entry of the order by the circuit court is procedurally anomalous, this is precisely what a litigant who is dissatisfied with the Magistrate's recommendations should do under the Rules when the circuit court enters an immediate order.

The consequences of the failure to file exceptions are different depending on the nature of the appeal. Rule 9-208(f) specifies that "[a]ny matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise." Rule 9-208(f). This Court has previously held that "if [an] appellant's sole basis for appeal was that the [Magistrate's] factual findings, such as they are, were clearly erroneous, her failure to file exceptions [is] fatal to such an argument." *Miller v. Bosley*, 113 Md. App. 381, 393 (1997) ("In short, in all cases lacking timely exceptions, any claim that the [Magistrate's] findings of fact were clearly erroneous is waived."). If, however, the basis of appeal is that the circuit court erred in its disposition of the case based upon the facts found by the Magistrate, this Court, while still bound by the findings of fact, may review the circuit court's application of those facts in reaching its decision. *Id.* (allowing the appeal to proceed where it assigned "error to the trial judge in the exercise of his independent judgment as to the propriety of his disposition of the case" from the facts contained in the Magistrate's Recommendations).

Here, Dillon argues that the circuit court erred when it accepted facts found by the Magistrate regarding the amount he should pay for child support and regarding the amount that Miller paid for medical insurance. These are factual challenges. The circuit court entered its order—based on the facts found by the Magistrate and based on the Magistrate's finding of extraordinary circumstances to justify an immediate order—before the time for filing exceptions had passed. Dillon failed to file exceptions to the Magistrate's second Report and Recommendations as required under the Rules. As a result, he cannot challenge these facts.[6] Thus, we affirm the circuit court's decisions regarding child support and medical insurance.

## II. Voluntary impoverishment and imputed income

Next, Dillon argues that the trial court erred when it concluded, based on the facts found by the Magistrate, that he was voluntarily impoverished and imputed income to him at a level consistent with his earning the federal minimum wage. Specifically, Dillon contends that, while he occasionally works in construction, his immigration status—his lack of a green card or work authorization—prevents him from finding consistent work. He testified, somewhat unclearly, that he could not return to Jamaica to work because it may affect his immigration status and visa application. Therefore, Dillon argues that he is

---

[6] Because Dillon failed to file exceptions to the Magistrate's Report and Recommendations, he can only challenge the circuit court's conclusions of law based on the facts found by the Magistrate (*i.e.*, the circuit court's conclusions on voluntary impoverishment and imputed income based on the facts found by the Magistrate). *See infra* Part II.

not voluntarily impoverished, rather that he is merely underemployed and should not have had income imputed to him. We disagree.

"Title 12 of the Family Law [("FL")] Article of the Maryland Code sets forth a comprehensive scheme with regard to parental child support" that considers the income of each parent. *Durkee v. Durkee*, 144 Md. App. 161, 182 (2002) (citations omitted). Maryland law defines "income" as:

> (1)     actual income of a parent, if the parent is employed to full capacity; or
>
> (2)     potential income of a parent, if the parent is voluntarily impoverished.

FL § 12-201(h). We consider a parent to be voluntarily impoverished "whenever the parent has made the free and conscious choice, not compelled by factors beyond his or her control, to render himself or herself without adequate resources." *Durkee*, 144 Md. App. at 182 (citations omitted).

We examine the following factors for voluntary impoverishment "[t]o determine whether a parent has freely been made poor or deprived of resources." *Goldberger v. Goldberger*, 96 Md. App. 313, 327 (1993). The factors include:

> (1)     his or her current physical condition;
>
> (2)     his or her respective level of education;
>
> (3)     the timing of any change in employment or other financial circumstances relative to the divorce proceedings;

9

(4)     the relationship between the parties prior to the initiation of divorce proceedings;

(5)     his or her efforts to find and retain employment;

(6)     his or her efforts to secure retraining if that is needed;

(7)     whether he or she has ever withheld support;

(8)     his or her past work history;

(9)     the area in which the parties live and the status of the job market there; and

(10)    any other considerations presented by either party.

*Lorincz v. Lorincz*, 183 Md. App. 312, 331 (2008) (citations omitted). A circuit court's finding of voluntary impoverishment will be affirmed if, after viewing the record in the light most favorable to the prevailing party, it is supported by any competent, material evidence in the record. *Sieglein v. Schmidt*, 224 Md. App. 222, 252 (2015) (citation omitted).

After the circuit court makes a finding that a parent is voluntarily impoverished, the circuit court must determine the amount of potential income that it will impute to the parent. *Shenk v. Shenk*, 159 Md. App. 548, 551-52 (2004). Potential income is used to calculate how much child support a voluntarily impoverished parent must pay. *Id.*; *see also* FL § 12-204(b)(1) ("Except as provided … if a parent is voluntarily impoverished, child support may be calculated based on a determination of potential income."). Potential income is defined as "income attributed to a parent determined by the parent's employment potential and probable earnings level based on, but not limited to, recent work history, occupational

10

qualifications, prevailing job opportunities, and earnings levels in the community."
FL § 12–201(l). Factors the court should consider to calculate a parent's potential income
include:

> (1)    age;
>
> (2)    mental and physical condition;
>
> (3)    assets;
>
> (4)    educational background, special training[,] or skills;
>
> (5)    prior earnings;
>
> (6)    efforts to find and retain employment;
>
> (7)    the status of the job market in the area where the parent lives;
>
> (8)    actual income from any source; and
>
> (9)    any other factor bearing on the parent's ability to obtain funds for child support.

*Petitto v. Petitto*, 147 Md. App. 280, 317-18 (2002) (citations omitted). If the potential
income amount calculated by the circuit court is "realistic, and the figure is not so
unreasonably high or low as to amount to [an] abuse of discretion, [then] the court's ruling
may not be disturbed." *Id.* at 318 (citation omitted).

Dillon has not convinced us that the circuit court erred in finding competent,
material evidence on the record to support its determination that Dillon was voluntarily
impoverished, or that it abused its discretion in the level of income that it imputed to him.

11

In arguing that the circuit court ruled incorrectly, Dillon contests only its characterization of his employment prospects—the driving force behind the factors for both voluntary impoverishment and imputed income. Specifically, Dillon argues that he is in a bind—he cannot find consistent work in the United States because of his immigration status, and he cannot return to Jamaica to work because it could undermine his immigration status and current visa application.

We hold, however, that based on the facts found by the Magistrate, the circuit court did not err in its characterization of Dillon's employment prospects—and, therefore, in its treatment of the factors for voluntary impoverishment and imputed income. Dillon testified that he completed high school in Jamaica, that he worked in construction in Jamaica, and that he had no mental or physical limitations that prevented him from working. He testified that he "[tries] to get work when [he] can." He also testified that he receives money from his wife and other family members to support his three other children. Thus, utilizing the facts found by the Magistrate, the circuit court's conclusions are reinforced by the options available to Dillon to secure the funds to support S. For example, Dillon can support S with:

(1) **Gifts:** Dillon's wife and family members provide money to support him and his three other children in the United States. Potentially they can provide money to Dillon to support S as well.

(2) **Salary and wages from work in the United States:** Dillon earns salary and wages from his work in United States. The salary and wages that he receives can be

used to support S. To be clear, we are not telling Dillon that he must work illegally to pay child support. Rather, Dillon admitted that he works when he can, even though he claims that he does not have a green card or work authorization. We can, and must, count the salary and wages that he earns from those jobs towards his child support obligations. *See Gallagher v. Gallagher*, 118 Md. App. 567, 581-82 (1997) (stating that determining alimony based on illegal income does not encourage or require a person to break the law, but merely recognizes an existing reality).

(3)    **Salary and wages from work in Jamaica:** Dillon could also return to Jamaica to work full-time. The salary and wages that he earns from full-time work in Jamaica could be used to support S. Although Dillon claims that returning to Jamaica to work will detrimentally affect his immigration status, he has not provided any competent evidence to support this claim.[7]

Because of the available methods by which Dillon can obtain money to pay child support, we see no error in the circuit court's determination—based on the facts found by the Magistrate—that Dillon was voluntarily impoverished. And, for these same reasons, we also hold that the circuit court did not abuse its discretion when it imputed to Dillon, based on the facts found by the Magistrate, income at the lowest level: full-time work at the federal minimum wage.

---

[7] The Magistrate determined that Dillon's testimony that "he had no income at all from income earning sources" was not credible. This credibility determination by the Magistrate supports the circuit court's conclusions that Dillon was voluntarily impoverished and that income should be imputed to Dillon at a level consistent with the federal minimum wage. As this credibility determination is a fact found by the Magistrate, Dillon cannot challenge it on appeal. *See Miller*, 113 Md. App. at 393 ("In short, in all cases lacking timely exceptions, any claims that the [Magistrate's] findings of fact were clearly erroneous is waived.").

13

Public policy supports this result. Dillon fathered S in the United States. He does not have any physical or mental limitations that prevent him from working. To the contrary, he has a long work history in construction in both Jamaica and the United States. Despite this, Dillon claims he cannot support S because he is not authorized to work in the United States. He also says that he cannot return to Jamaica to work because that will affect his immigration status. The logical extension of Dillon's argument is that a person who is physically and mentally capable of working to support his or her child, but is not authorized to work in the United States, cannot be required to pay child support. We cannot countenance such a result. Therefore, as we explained above, Dillon must support S in any way that he can.

## CONCLUSION

In sum, because Dillon failed to file exceptions to the Magistrate's second Report and Recommendations, we decline to address his challenges to the facts found by the Magistrate that were accepted by the circuit court. Additionally, because we hold that the circuit court did not err in finding that Dillon was voluntarily impoverished, and did not abuse its discretion in imputing income to Dillon at the federal minimum wage, we affirm the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**