982 A.2d 1150

**Jennifer Laird GREEN**

v.

**William R. GREEN, Jr., et al.**

No. 01811, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Oct. 30, 2009.

664

Daniel D. Rosendale of Centreville, for appellant.

Christopher F. Drummond of Centreville, for appellee.

Panel: DEBORAH S. EYLER, MEREDITH and JAMES A. KENNEY, III, (retired, specially assigned), JJ.

KENNEY, J.

Jennifer Laird Green ("Mother"), appellant, and William R. Green, Jr. ("Father"), appellee, entered into a Modified Custody Agreement (the "Custody Agreement") providing them with joint legal and physical custody of their daughter, Madison, "as specified [in the Custody Agreement]." The Custody Agreement provided that Madison would reside with Mother's aunt and uncle (the "Millers"). The Custody Agreement was

incorporated by reference into the Judgment of Absolute Divorce entered by the Circuit Court for Queen Anne's County on June 30, 2006.

After completing a rehabilitation program for substance abuse, Mother filed a complaint to modify custody. At the conclusion of the merits hearing, on June 19, 2008, the master found, on the record, that Mother had not shown a material change in circumstances and recommended that Mother's motion to modify custody be denied. The master filed his written findings and recommendation on July 7, 2008, and, on July 14, Mother filed exceptions to the master's recommendation—25 days after the master gave his oral recommendation at the hearing. Father filed, and the circuit court granted, a motion to strike the exceptions for not being timely filed. Mother moved to vacate the order and to reinstate the exceptions. The court heard the motion, along with argument on the exceptions. It upheld its grant of the motion to strike exceptions and denied the motion to reinstate exceptions. It also indicated that, had the exceptions been timely filed, it would have overruled them.

Mother appeals, presenting the following questions for our review:

I. Are [Mother's] exceptions properly preserved for Appeal?

II. Did the trial court err when it allowed [the Millers] to intervene as a third party to the case?

III. Did the trial court err when it found that the Agreement and Order of June 30, 2006, awarded primary physical custody of the minor child to the Millers?

IV. Did the trial court err when, absent a finding of unfitness or exceptional circumstances, the Court failed to apply the presumption in favor of a biological parent and shifted the burden of proof to the parent during the best interest of the child analysis in an Intervening Third Party custody case?

V. Did the trial court err when it failed to exercise discretion by entering a pendente lite order entered into by

parties pending the conclusion of litigation as a final order intended to completely resolve the custodial arrangement of the minor child?

We shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were divorced on June 30, 2006. Their Custody Agreement was incorporated by reference into the Judgment of Absolute Divorce entered by the Circuit Court for Queen Anne's County. Under the Custody Agreement, the parties shared joint legal and physical custody of their then eight-year-old daughter, Madison, "as specified [in the Custody Agreement]." The Custody Agreement provided the Millers with "primary residential custody" of Madison.

When she entered into the Custody Agreement, Mother was undergoing rehabilitation for substance abuse. On March 19, 2007, after completing a rehabilitation program, Mother filed a Complaint to Modify Custody, seeking primary physical custody of Madison. Father filed an answer on April 27, 2007, asking that Mother's complaint be denied. The Millers, on May 14, 2007, filed, and the court granted, a Motion to Intervene. On August 21, 2007, the parties, after a settlement conference, reported the matter settled, placed the settlement on the record, and agreed to submit a proposed order to the court. After a significant delay in submitting the proposed order, the court conducted a status conference on December 20, 2007, in which the parties indicated that they could not agree on the proposed order and that matters remained unresolved.

The case was set for a merits hearing to be held on February 11, 2008. On February 8, 2008, the circuit court cancelled that hearing, issued a Memorandum and *Pendente Lite* Order Regarding Child Custody, based on the settlement reported to the court and placed on the record, and set the matter for a status conference on May 8, 2008. At the status conference, the matter was set for a master's hearing on June 19, 2008.

At the conclusion of that hearing, the master announced on the record his findings and recommendations. Pertinent to this appeal, he stated:

[T]he agreement as incorporated into the judgment says: The child shall reside primarily with [the Millers]. [The Millers] shall have primary residential custody of the child. So that's really where we start from in this case. I will find there's an order that has awarded primary physical custody of the child to [the Millers] at this point in time

\* \* \*

[Y]ou start from where you are and then you have to go from there, so, really, its [sic] [Mother] coming back in demonstrating, one, that there has been a material change in circumstances and, two, that it is in the best interests of the child that the child remain primarily with her. So I really do think the burden lies there.

\* \* \*

When the Court is looking at a change of custody case, it really does a two-step analysis. The first is to assess whether there is a change in circumstances and the second is whether ... if there's a change in circumstances, whether that change, in effect, affects the best interests of the [child]....

\* \* \*

So, for the purpose of filing exceptions and appeals, the Court will determine that the burden in this case is going to be upon [Mother] to demonstrate that there has been a significant material change in circumstances that affects the welfare of the child, that makes it in the child's best interests to be returned to her primary physical care and custody at this point in time.

\* \* \*

[T]he Court finds that there is [sic] exceptional circumstances in this case, if such were required....

Moving on to the best interests of the child, ... I will find that each parent is a fit parent at this point in time.

Character and reputation of the parties.... No one has assailed [the Millers'] character or reputation at all today.

With regard to [Father], [Mother] would indicate that his character and reputation are less than perfect.... He hasn't been actively and overtly involved in the child's life.... That being said, I don't find that makes him of poor character or reputation.

[H]e's kept his eyes open to the big picture and about what's in the child's best interests, and if there's this village there to offer more to Madison than, perhaps, he feels he can offer himself, is that a bad thing? I'll say absolutely not.

With regard to [Mother], her character and reputation. I guess, the assails that we have had upon her character and reputation have been that clearly and admittedly so, she's had a past problem with mental illness and with substance abuse....

I will find that both parents in this case are of good character and reputation.

Desire of the natural parents and agreements of the natural parents.... Clearly, the desire of [Mother] is that the child reside with her primarily. Clearly, the desire of [the Millers] and [Father] are that the present—that the status quo continue in this matter.

The next factor the Court needs to consider is the potential of maintaining natural family relations....

\* \* \*

It appears to me there have been natural family relations to date. ....

\* \* \*

Preference of the child; we really haven't heard about the preference of the child. It is very, very clear to me that the child is very attached to everybody involved in this case

Material opportunities affecting the future lives of the child I don't find that material opportunities affecting the future lives [sic] of the child has really any importance in this case

Age, health, and sex of the child. The child is ten years old. The child is in good health, but for hypothyroidism, for which she is appropriately and properly treated

Residence of the parties and the opportunities for visitation. The Millers live just north of Centreville, [Mother] lives in Anne Arundel County .... just about 40 minutes away.....

Length of separation from the natural parent, I don't think that the child has ever been separated from the natural parent for any substantial period of time

I find that neither parent has voluntarily abandoned or surrendered the child

* * *

I have concerns about [Mother] continuing to even have moderate levels of alcohol, while she continues to do this 12–step programs of AA and NA. I am very concerned about the dilute specimen that she provided to the health department. We haven't had any real explanation for that dilute, other than it was dilute and that can happen. These are concerns that I have.

* * *

I think that based upon [Mother's] underlying mental health condition, [her] past problems with substances, that any use of any substance that alters [her] mind puts [her] at great risk for relapse and, accordingly, if the child were in [her] care and custody, . . . puts the child in a grave area for concern.

* * *

So I am going to recommend that, at this point in time, that the Court deny the motion to modify custody....

In a subsequent Report, Finding of Facts and Recommendation of Master, filed July 7, 2008, the master stated:

At the hearing on June 19, 2008, [Mother] presented evidence to indicate that she has stable sobriety, housing and employment, and it was suitable for the child to remain in her care and custody. For the reasons set forth on the

record, the Court found that their [sic] had not been a significant change in the circumstances of [Mother]'s life that would make it in the best interest of the child to be returned to the primary physical custody of [Mother]. The Court was very concerned about [Mother]'s sobriety as a result of the dilute specimen submitted to the Health Department, her casual attitude toward continued treatment and attendance at AA/NA meetings and her continued consumption of alcohol in casual settings. While [Mother] seems to have established a stable and appropriate living environment, the location of that home would cause substantial change to Madison as it would cause her to attend school in a different county. Further, while [Mother] has become employed at a stable job, she has only been there for a short time and, based upon history, it is appropriate that she establish a longer period of stable employment before it would be appropriate to consider having the child reside primarily with her.

Accordingly, the master recommended that:

1. [Mother]'s Complaint to Modify Custody and Support be denied.

2. This Court's order dated February 8, 2008, remain in full force and effect as a final order.

3. [Mother] pay the costs of this proceeding.

Mother filed exceptions on July 14, 2008, and ordered the transcript of the hearing. On July 17, 2008, Father filed a motion to strike the exceptions. On August 5, 2008, the circuit court granted the motion to strike the exceptions and entered the *Pendente Lite* Order Regarding Child Custody as a Final Custody Order.

On August 6, 2008, Mother filed a motion to vacate the August 5, 2008, order and to reinstate the exceptions. The court heard this motion, as well as argument on the exceptions, on August 27, 2008, and ordered that "the 'Motion to Vacate Order and Reinstatement of Exceptions' be ... DENIED," and that "the exceptions filed by [Mother] be ... OVERRULED." The court explained in its bench ruling that

the February 2008 Custody Order was "now going to be the final order," that the motion to reinstate exceptions was denied because the exceptions were not timely filed, and that the court "overrule[d] the exceptions, basically gratuitously."

Mother filed this timely appeal.

## *DISCUSSION*

### I.  Are [Mother's] exceptions properly preserved for Appeal?

In regard to a matter before a master, Rule 9–208(e)(1) provides that "[t]he master shall notify each party of the recommendations, either on the record at the conclusion of the hearing or by written notice served pursuant to Rule 1–321." Rule 9–208(f) provides:

> Within ten days after recommendations are placed on the record or served pursuant to section (e) of this Rule, a party may file exceptions with the clerk. Within that period or within ten days after service of the first exceptions, whichever is later, any other party may file exceptions. Exceptions shall be in writing and shall set forth the asserted error with particularity. Any matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise.

In *Morales v. Morales,* 111 Md.App. 628, 629, 683 A.2d 1124 (1996), this Court addressed the "narrow issue of when a party's time for filing exceptions to a master's recommendations . . . begins to run." In *Morales,* as in this case, the appellant filed exceptions within ten days of the filing of the master's written recommendations but not within ten days of the master's oral recommendations entered on the record on the hearing date. *Id.*

The *Morales* Court considered former Rule S74(A)(c), which stated, in part, that "the master shall notify each party of the master's recommendations, either on the record at the conclusion of the hearing or by written notice . . . ," *id.* at 631, 683 A.2d 1124, and former Rule S74(A)(d), which stated, in part,

that "any written notice is required to issue within three days of the date of hearing." *Id.* The appellant argued that it was unclear whether the ten days began to run from the conclusion of the hearing or his reception of the written recommendations, which were filed twenty-one days after the hearing. *Id.* at 632, 683 A.2d 1124. The Court explained that, "[h]ad the master elected to serve the parties with written notice of his recommendations rather than notifying the parties at the conclusion of the hearing, he would have been required to serve such notice within three days of the hearing." *Id.* at 633, 683 A.2d 1124.

The same analysis applies to the current rule. Pursuant to Rule 9–208(e)(1), had the master elected to serve the parties with written notice of his recommendations rather than notifying the parties at the conclusion of the hearing, he would have been required to serve such notice "within ten days after the conclusion of the hearing." The master did not file his recommendations until eighteen days after the hearing.

In *Morales,* we stressed that the time to file exceptions runs from the date of notice to the parties as to the master's recommendations and explained:

[The Rule] keys the running of time for filing exceptions to the issue of notice. . . .

Once the master orally delivers his recommendations on the record, the parties are on notice of the recommendations, and the time for filing begins to run. The issuance of subsequent written notice does not act to cancel the fact that the parties already are on notice.

*Id.* at 632–33, 683 A.2d 1124. Here, as in *Morales,* the master gave his recommendation at the conclusion of the hearing.

Mother contends that she was denied "notice, fundamental fairness and equal protection under due process." She argues that the master did not indicate that the conclusions he made on the record on the hearing date constituted his recommendation or if a written recommendation was forthcoming. According to Mother, the master "failed to indicate whether his analysis was 'the' recommendation and failed to advise the

parties of the ten day requirement to file exceptions pursuant to the same [T]he failure of [the master] to clearly advise the parties failed to place them on appropriate notice such that they [could] have a real opportunity to respond." We are not persuaded.

The record reflects that the master gave a lengthy discussion of his findings and recommendation at the conclusion of the hearing, and that he advised the parties of their rights to file exceptions. He clearly stated:

> So, I'm going to recommend, at this point in time, that the Court deny the motion to modify custody and prior to anybody seeking an alternate motion or further motion to modify custody, that the parties go to mediation to sort of try to work something out, as we go forward.
>
> * * *
>
> You each have the ability to file written exceptions with the Court, which is to point out to the ... Court what errors you think I made and why you think I made those.

Mother also challenges the fairness of the Rule because "the moving party must decide between filing too early and being substantively deficient or filing too late and being procedurally deficient." Again, we disagree. Under Rule 9–208(e)(2), if a master "issue[s] a supplementary report and recommendation on the master's own initiative before the court enters an order of judgment[, a] party may file exceptions to new matters contained in the supplementary report and recommendations in accordance with section (f) of this Rule." In addition, Rule 9–208(f) also provides a "second chance" in that a matter deemed waived by the specificity requirement could still be considered if "the court finds that justice requires otherwise."

■ The Rule provides an adequate opportunity for parties to take exceptions to masters' recommendations. If something that was not mentioned by a master's oral recommendation appears in the written recommendation, exceptions to any new matters can be filed, and, even if an exception is not sufficiently specific, the matter will not be deemed waived upon a finding that "justice requires" its consideration.

Mother also argues that "the failure to file exceptions should not be a bar to the filing of an Appeal based upon the improper application of those (now) established facts to the prevailing law.  . . ." We agree.  As we explained in *In re Levon A.*, 124 Md.App. 103, 125, 720 A.2d 1232 (1998), *rev'd on other grounds*, 361 Md. 626, 762 A.2d 572 (2000), though failing to file exceptions to a master's findings prevents a party from appealing the circuit court's adoption of the master's factual findings, a party is not precluded from appealing the trial court's adoption of the master's recommendation if the issues appealed concern the court's adoption of the master's application of law to the facts.

Pursuant to our decisions in *In re Levon A.* and *Miller v. Bosley*, 113 Md.App. 381, 688 A.2d 45 (1997), the factual findings that the circuit court adopted from the master's findings, because no timely exceptions were filed, cannot be reviewed.  Nevertheless, Mother's questions III–V essentially challenge the master's legal analysis and recommendations and the propriety of the circuit court's actions in adopting that recommendation.  As we said in *In re Levon A.*, 124 Md.App. at 123, 720 A.2d 1232 (quoting *Miller*, 113 Md.App. 381, 688 A.2d 45):

> We perceive that appellant assigns error not to the master, but to the trial judge in his exercise of his judicial responsibilities.  Although exceptions are the proper vehicle for review of the master's findings, this appeal may properly consider the propriety of the judge's actions.

*See also Miller*, 113 Md.App. 381, 688 A.2d 45; *In re Zephrin D.*, 69 Md.App. 755, 519 A.2d 806 (1987) (This Court reviewed an order of restitution lodged against the mother, though only the juvenile, and not the mother, filed an exception to the master's report.);  Rule 9–208(h)(1)(B) ("[I]f exceptions are not timely filed, the court *may* direct the entry of the order or judgment as recommended by the master." (emphasis added));  *See generally Ellis v. Ellis*, 19 Md.App. 361, 365, 311 A.2d 428 (1973) ("Litigants in a child custody proceeding, as in all judicial proceedings, are entitled to have their cause deter-

mined ultimately by a duly qualified judge of a court of competent jurisdiction."); *Compare, In the Matter of Tyrek S.*, 351 Md. 698, 720 A.2d 306 (1998) (Master's factual findings not excepted to or heard by the circuit court were not preserved for appellate review.)

Moreover, the questions presented do not offend Md. Rule 8–131(a), which provides that "ordinarily" we will not decide any issue that does not "plainly appear[ ] by the record to have been raised in or decided by the trial court...." All of the questions raised on appeal were considered by the circuit court, albeit gratuitously, in denying the exceptions on the merits. Therefore, as in *In re Levon A.*, where the court considered the issue "just in case," the issues raised in this appeal were "squarely considered and 'plainly decided' by the circuit court.' " *In re Levon A.*, 124 Md.App. at 125, 720 A.2d 1232.

## II. Did the trial court err when it allowed [the Millers] to intervene as a third party to the case?

The Millers moved to intervene as defendants pursuant to Md. Rule 2–214. In her answer, Mother argued that the Motion to Intervene "fails to comply with Rule 2–214(c)" and that "the Millers were not a party to the action or the agreement." Upon consideration of the Motion to Intervene and the answer filed thereto, the court ordered that the Millers shall be added as additional defendants.

On appeal, Mother argues that the Motion to Intervene did not comply with Md. Rule 2–214(c), as the Millers never filed any pleadings as required by the Rule, nor asked the court for any relief. She also challenges their right to intervene, stating: "The Millers have failed to allege any facts that would support an 'unconditional right' to intervene.... Without the filing of a Complaint for Custody by the Millers, they have failed to allege any 'interest' necessary for standing to afford them relief or the ability to intervene in the first instance."

The Millers acknowledge that "[they] did not file a separate answer to the Motion To Modify Custody," but argue that

"[Mother] did not seek an Order of Default," and that she "treated the Millers as proper parties by propounding Interrogatories to them which they dutifully answered."

Rule 2–214(a) states:

Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented.

The Court of Appeals stated, in *Conroy v. Southern Maryland Agricultural Ass'n,* 165 Md. 494, 502–03, 169 A. 802 (1934):

While the authorities are not in accord as to the right of one interested in the subject-matter of an equity proceeding to intervene therein, the rule in this state, and one generally recognized elsewhere, is that the right to so intervene is not, unless the proceeding is *in rem* and the ultimate decree will finally determine some interest, claim, or property right of the petitioner, absolute, but rests in the sound discretion of the court.

The Millers were "residential custodians" of Madison per the Custody Agreement, which was incorporated into a court order. Therefore, we are not persuaded that the circuit court abused its discretion by granting their motion to intervene. *See Dietrich v. Anderson,* 185 Md. 103, 43 A.2d 186 (Md.1945) ("Foster parents having custody of an infant child under an order of an equity court, are 'persons parties to the suit' within the statute authorizing an appeal.").

Rule 2–214(c) states:

A person desiring to intervene shall file and serve a motion to intervene. The motion shall state the grounds therefor and shall be accompanied by a copy of the proposed pleading setting forth the claim or defense for which intervention is sought. An order granting intervention shall designate

the intervenor as a plaintiff or a defendant. Thereupon, the intervenor shall promptly file the pleading and serve it upon all parties.

██ Even though no pleading accompanied the Millers' motion to intervene, it was clear to all parties that the Millers' purpose for intervening was to resist the modification of the Custody Order and to maintain the *status quo*. That was the only issue before the court. Certainly, the Millers should have filed the appropriate pleading, but, in the circumstances of this case, the alleged error elevates form over substance, and there was no prejudice to Mother. Not only was Mother aware of the Millers' position, she sought and received discovery from them.

### III. Did the trial court err when it found that the Agreement and Order of June 30, 2006, awarded primary physical custody of the minor child to the Millers?

The Custody Agreement states, in pertinent parts:

Husband and Wife shall have joint legal custody and physical custody of their minor Child as specified below. June Miller and Donnie Miller shall have the legal authority to consent to the care, education matters, and discretion regarding visitation for the minor Child.

The Child shall reside primarily with June Miller and Donnie Miller. June Miller and Donnie Miller shall have primary, residential custody of the Child.

Husband shall have physical custody of the Child on an every other weekend schedule from Friday after school . . . through Monday morning when Husband shall take the Child to school or make arrangements for the Child to get to school. Husband shall additionally have custody of the Child every Wednesday from after school, and if no school 9:00 a.m. through Thursday morning.

\* \* \*

Wife shall have physical custody of the Child on an every other weekend schedule from Friday after school through Sunday evening at 7:00 pm

The parties may arrange for additional periods of time with the Child; however, said arrangements shall be within the discretion of June Miller and Donnie Miller.

\* \* \*

The parents and the Millers shall both be permitted to participate, attend, and become involved in the Child's performances, extracurricular activities, field trips, etc. upon the agreement of June Miller and Donnie Miller. Any periods of time either parent spends with the minor Child in the aforesaid performances, extracurricular activities, field trips, etc. shall be in addition to the custody/visitation schedule and holiday schedule set forth in this Agreement.

\* \* \*

The parties acknowledge that the Child's well-being requires the Child maintain the stability and relationship she has established with June and Donnie Miller. Husband and Wife shall cooperate with each other and with June Miller and Donnie Miller in order to foster a feeling of affection between the minor Child, each parent, and the Millers.

\* \* \*

During any period when a parent or the Millers has physical custody of the minor Child, the custodian shall notify the other parent(s) and the Millers of all significant matters involving the activities and welfare of the Child. . . . Except in the event of an emergency, the parties will make genuine, sincere, and bona fide efforts to ensure that major decisions regarding the minor Child are made by both parties and the Millers.

\* \* \*

The Millers shall have the sole discretion to deny access to the minor Child if the Millers reasonably believe that the parent has been consuming and/or will be consuming alcohol or controlled substances

Neither parent nor the Millers shall permit custody of the minor Child with any other person unless an express agreement is reached between Husband, Wife, and the Millers.

Mother argues that the circuit court erred by determining that the Custody Agreement awarded primary physical custody to the Millers.

█ By incorporating the Custody Agreement into the Judgment of Absolute Divorce, it became enforceable through the courts, as a court order. *See Kemp v. Kemp*, 287 Md. 165, 175, 411 A.2d 1028 (1980) ("Once the court decides to incorporate an agreement between the parties as part of its decretal relief, something which it does not necessarily have to do, particularly as to provisions relating to children, . . . the agreement is included within the order and is enforceable as a valid provision of the decree.").

The Court of Appeals stated in *Taylor v. Mandel*, 402 Md. 109, 126, 935 A.2d 671 (2007):

[C]ourt orders are construed in the same manner as other written documents and contracts, *Md. Comm'n on Human Relations v. Downey Communications, Inc.*, 110 Md.App. 493, 518, 678 A.2d 55, 67 (1996), and if the language of the order is clear and unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used. *Hosain v. Malik*, 108 Md.App. 284, 310–11, 671 A.2d 988, 1001 (1996). Ambiguity exists, however, if "when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris v. Woods*, 353 Md. 425, 436, 727 A.2d 358, 363 (1999). *See also Cheek v. United Healthcare of Mid–Atlantic, Inc.*, 378 Md. 139, 162–63, 835 A.2d 656, 670 (2003). We have stated that "language can be regarded as ambiguous in two different respects: 1) it may be intrinsically unclear . . .; or 2) its intrinsic meaning may be fairly clear, but its application to a particular object or circumstance may be uncertain. Thus, a term which is unambiguous in one context may be ambiguous in another." *See Liverpool v. Balt. Diamond Exch., Inc.*, 369 Md. 304, 318, 799 A.2d 1264, 1272 (2002). If ambiguous, the court must discern its meaning by looking at the circumstances surrounding the order to shed light on the ambiguity, including the motion in response to which it

was made. *See Carpenter Realty Corp. v. Imbesi*, 369 Md. 549, 561–62, 801 A.2d 1018, 1025 (2002); *Balducci v. Eberly*, 304 Md. 664, 670, 500 A.2d 1042, 1045 (1985).

Because the language of the Custody Agreement is, in our view, clear and unambiguous, we will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used. The Custody Agreement states that "Husband and Wife shall have joint legal custody and physical custody of their minor child *as specified below*." (Emphasis added). It "specified below" that "the Child shall reside primarily with June Miller and Donnie Miller. June Miller and Donnie Miller shall have primary, residential custody of the Child."

Mother argues that she never gave physical custody to the Millers through the Custody Agreement. She states that "[t]he Court Order entered on June 30, 2006 expressly grants 'joint legal and physical custody' only to the *parties*." She overlooks the qualifying phrase "as specified below," and, to some extent, misunderstands the meaning of "physical custody."

The Court of Appeals explained the difference between legal and physical custody in *Taylor v. Taylor*, 306 Md. 290, 295, 508 A.2d 964 (1986):

> Embraced within the meaning of "custody" are the concepts of "legal" and "physical" custody. Legal custody carries with it the right and obligation to make long range decisions involving education, religious training, discipline, medical care, and other matters of major significance concerning the child's life and welfare.... Joint legal custody means that both parents have an equal voice in making those decisions, and neither parent's rights are superior to the other.
>
> Physical custody, on the other hand, means the right and obligation to provide a home for the child and to make the day-to-day decisions required during the time the child is actually with the parent having such custody....
>
> With respect to physical custody, there is no difference between the rights and obligations of a parent having

temporary custody of a child pursuant to an order of shared physical custody, and one having temporary custody pursuant to an award of visitation. Thus, a determination to grant legal custody to one parent and to allocate physical custody between the parents may be accomplished either by granting sole custody to one parent and specified rights of visitation to the other, or by granting legal custody to one parent and specified periods of physical custody to each parent. In either instance, the effect will be the same.

Out of a fourteen day period, under the Custody Agreement, Mother was to have Madison for two days and Father was to have her for four days. Therefore, both in terms of time and by express designation, the Millers were the primary physical custodians of Madison. Mother and Father also gave the Millers the right to consent to further visitation by either party; the right to consent to parental involvement in Madison's extracurricular activities; a say in "major decisions made regarding the minor Child[;]" and even a say in any decision allowing another person to have custody of Madison. Based on our *de novo* review, we conclude that the language and the actual effect of the Custody Agreement placed Madison in the primary physical custody of the Millers.

Mother argues that "[i]f in fact the Agreement and Order were to have the legal effect of transferring custody to the Millers, the parties should have been voir dire[d] by the Court to ensure they knowingly surrendered such a fundamental right."

This case does not involve the termination or surrender of fundamental parental rights. As the Court of Appeals stated in *Shurupoff v. Vockroth,* 372 Md. 639, 656–57, 814 A.2d 543 (2003):

> We do not regard an order granting custody of a child to a third party, subject to modification and with appropriate visitation privileges reserved to the parent, as the equivalent of terminating parental rights. . . . It does not deny the parent the right to visit, communicate with, or ever regain custody; it does not "pit[ ] the State directly against the parents" and does not bear any of the "indicia of a criminal

trial." The parents are not necessarily economically or intellectually disadvantaged parties left to face the vast array of State resources; indeed, except for supplying a neutral arbiter in the form of the equity court, the State is usually not involved in the dispute.

*See, e.g., In re Adoption/Guardianship of Rashawn H.,* 402 Md. 477, 496, 937 A.2d 177 (2007).

Under the Custody Agreement, Mother and Father shared legal custody and they agreed to designate specific times when they would be the physical custodians of Madison. The Custody Agreement did not have the legal effect of transferring all custody rights to the Millers and terminating Mother's parental rights. Rather, the Custody Agreement represented an exercise of those rights by the parties themselves, which the court accepted.

Moreover, Mother cannot reasonably claim that she was not aware that the Custody Agreement placed Madison in the primary physical custody of the Millers. She expressly acknowledged in the Custody Agreement that she "freely and voluntarily" entered into the Custody Agreement, that she had the opportunity to consult with counsel, "that [the] Agreement [was] a fair and reasonable Agreement, and that it [was] not the result of any fraud, duress, or undue influence exercised by either party upon the other, or by any person or persons upon either party." It is important to recognize that it was the parties who involved the Millers in the care and custody of Madison. The court was not obliged to ensure the parties' understanding of an unambiguous agreement that was negotiated with the benefit of counsel.

IV. **Did the trial court err when, absent a finding of unfitness or exceptional circumstances, the Court failed to apply the presumption in favor of a biological parent and shifted the burden of proof to the parent during the best interest of the child analysis in an Intervening Third Party custody case?**

Mother confuses and misapplies principles applied by Maryland courts for decades in custody cases. In doing so, what

seems to us to be a simple case, from an analytical perspective, is made to appear complicated. A review of the role of the court in custody cases, the longstanding principles applied, and the difference between custody disputes between fit parents and those between parents and third parties is instructive.

We start with the United States Supreme Court's plurality opinion in *Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), where the Court observed that "[it has] recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children" and that the Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id.* at 65, 120 S.Ct. 2054 (citing *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)).

Under Maryland Code (1999, 2006 Repl.Vol.), § 5–203(a) of the Family Law Article ("FL"), "parents are the joint natural guardians of their minor child." They are "jointly and severally responsible for the child's support, care, nurture, welfare, and education" and "have the same powers and duties in relation to the child." FL § 5–203(b). Also, "[n]either parent is presumed to have any right to custody that is superior to the right of the other parent." FL § 5–203(d).

Under FL § 1–201(a), an equity court has jurisdiction over custody, visitation, guardianship, and support of a child. In exercising its jurisdiction it may:

(1) direct who shall have the custody or guardianship, visitation, or support of a child, pendente lite or permanently;

(2) determine who shall have visitation rights to the child;

(3) decide who shall be charged with the support of the child, pendente lite or permanently;

(4) from time to time, set aside or modify its decree or order concerning the child....

FL § 1–201(b).

The Court of Appeals has stated:

> [T]he equity courts of this State have plenary authority to determine questions concerning the welfare of children within their jurisdiction, and such power does not terminate once custody, support and visitation rights have been established by the decree. For time beyond memory, the public policy of this State has required that, when exercising this authority, the court's paramount concern be to secure the welfare and promote the child's best interest.

*Stancill v. Stancill*, 286 Md. 530, 534, 408 A.2d 1030 (1979) (internal citations omitted).

Much of Mother's argument relates to the analytical differences in custody disputes between fit parents and those involving a third party. As explained by the Court of Appeals in *McDermott v. Dougherty*, 385 Md. 320, 325, 869 A.2d 751 (2005):

> [I]n disputed custody cases where private third parties are attempting to gain custody of children from their natural parents, the trial court must first find that both natural parents are unfit to have custody of their children or that extraordinary circumstances exist which are significantly detrimental to the child remaining in the custody of the parent or parents, before a trial court should consider the "best interests of the child" standard as a means of deciding the dispute.
>
> * * *
>
> The arguments and outcome of the instant case in no way alter the "best interests of the child" standard that governs courts' assessments of disputes between *fit parents* involving visitation or custody. We have frequently and repeatedly emphasized that in situations where it applies, it is the central consideration.

(Emphasis in original.).

In *Koshko v. Haining*, 398 Md. 404, 422, 921 A.2d 171 (2007), the Court of Appeals further recognized "the fundamental right of parents generally to direct and control the upbringing of their children." The Court stated that "[t]his liberty interest provides the constitutional context which looms

over any judicial rumination on the question of custody or visitation," and "as a natural incident of possessing this fundamental liberty interest, [parents] are entitled to the long-settled presumption that a parent's decision regarding the custody or visitation of his or her child with third parties is in the child's best interest." *Id.* at 423, 921 A.2d 171.

In the more recent case of *Barrett v. Ayres,* 186 Md.App. 1, 17, 972 A.2d 905 (2009), we explained that, where a parent is found to be fit, and no exceptional circumstances are found to exist, the court must presume that a parent's decision concerning visitation of his or her child by a third party is in the child's best interest. If the parent's decision concerning visitation goes against a previous court order, the parent's decision represents a material change in circumstances because it is a change that is presumed to be in the best interest of the child. In that situation, the burden shifts to the third party to establish that the parent is unfit or that exceptional circumstances exist before the court may rule against the parent's desires.

Here, Mother argues that "as to the Millers, the analysis is different." She contends that the court erred in not treating the Millers as a third party, and not applying the appropriate burden and presumptions that accompany the analysis of a custody dispute between a fit parent and a third party. She cites *Janice M. v. Margaret K.,* 404 Md. 661, 948 A.2d 73 (2008), stating that, "absent a finding of unfitness, it is the burden of the Millers to demonstrate that exceptional circumstances exist which are such that parental custody would be detrimental to the best interest of the child." She then reviews the factors which may be probative in determining the existence of exceptional circumstances, as stated in *Ross v. Hoffman,* 280 Md. 172, 372 A.2d 582 (1972).

■ But, as Mother herself acknowledges, the Custody Agreement was between her and Father, both of whom were deemed fit parents. It was Mother and Father who chose to include the Millers in Madison's custody arrangements. In reviewing Mother's petition for a modification of the Custody

Agreement, the court had to consider the desires of both Father and Mother, as "[n]either parent is presumed to have any right to custody that is superior to the right of the other parent," FL § 5–203(d), and each parent has the fundamental right to the "care, custody, and control" of their child. Neither the fact that Father did not seek physical custody for himself, nor the intervention of the Millers, to the extent they did not seek to modify the Custody Agreement, transformed this case into a third-party custody or visitation case. The case remains a dispute between fit parents.

Mother's argument seems to be that it is the Millers, and not Father, who are opposing the modification of custody. However, that is not the case. The Millers may be siding with Father, but, even if the Millers were on Mother's side, it would still be a decision for the court to make after considering whether a change in circumstances had occurred that would make the change in custody in the best interest of Madison.

Mother seeks to modify the Custody Agreement, while Father seeks to keep the *status quo*—the custody arrangement that both Mother and Father, presumably acting in Madison's best interest, agreed to and asked the court to incorporate into the Judgment for Absolute Divorce. Had Mother entered into the Custody Agreement only with the Millers, and later changed her mind, under *Barrett*, the court may have had to presume that Mother's decision to modify that agreement was a material change in circumstances that was in Madison's best interests, and shifted the burden to the Millers to demonstrate that Mother was an unfit parent or that exceptional circumstances existed in order to overcome that presumption.[1]

Moreover, it would appear that the court conducted the analysis Mother seeks. In case this Court found that it was necessary for the Millers to demonstrate exceptional circum-

---

1. The *Barrett* Court addressed third-party visitation orders only and did not reach the issue of third-party custody orders.

stances, the master went through factors often considered in determining whether exceptional circumstances exist, including the fitness of each parent, the character and reputation of the parties, the desires and agreements of the natural parents, the potential for maintaining natural family relations, the child's preference, the material opportunities affecting the future lives of the child, the age, health, and sex of the child, the residence of the parties and opportunities for visitation, the length of separation from the natural parent, parental abandonment, the health of the parties, and the stability of the parties. *See Ross v. Hoffman*, 280 Md. 172, 191, 372 A.2d 582 (1972). Of course, "exceptional circumstances are not established through a rigid test, but rather by an analysis of all of the factors before the court in a particular case." *Janice M. v. Margaret K.*, 404 Md. 661, 693, 948 A.2d 73 (2008).

After analyzing "all of the factors before the court," the master found that "exceptional circumstances exist[ed]," explaining, in part, that "based upon [Mother's] underlying mental health condition, [her] past problem with substances, that any use of any substance that alters [her] mind puts [her] at great risk for relapse and, accordingly, if the child were in [her] care and custody, . . . puts the child in a grave area for concern." This finding of exceptional circumstances would have permitted the court to undertake a best interest of the child analysis, had it been necessary, and the court would have reached the same result.

In making its independent review, the circuit court adopted the master's conclusions of law as its own. The master stated in his July 7, 2008, Report:

> In child custody cases in Maryland, the court functions both as a protector of the children and as a resolver of disputes between the parents. *Ross v. Hoffman*, 280 Md. 172, 372 A.2d 582 (1977). Custody orders in this state are never final, however, any reconsideration of a decree should emphasize changes in the circumstance of the parties since the last decree. *Hardisty v. Salerno*, 255 Md. 436, 258 A.2d 209 (1969). In Maryland, custody orders entered by the consent of the parties are treated as final orders, subject to

modification upon a sufficient showing of a change in the circumstances of the parties. *Raible v. Raible,* 242 Md. 586, 219 A.2d 777 (1966). When presented with a request for a change of custody the court employs a two step analysis. First, the court must assess whether there has been a material change in circumstances. *Wagner v. Wagner,* 109 Md.App. 1, 674 A.2d 1 (1996). If a finding is made that there has been a material change, the court then proceeds to consider the best interests of the children as if it were performing an initial custody determination. *Braun v. Headley,* 131 Md.App. 588, 750 A.2d 624 (2000).

A change in circumstances is material only when it affects the welfare of the child. *McCready v. McCready,* 323 Md. 476, 593 A.2d 1128 (1991). Because the purpose of the underlying material change is the same, whether the request is to change custody or a change of the schedule of physical custody or visitation, such a change must be shown in either case. *McMahon v. Piazze,* 162 Md.App. 588, at 594[875 A.2d 807] (2005). The Court of Appeals has explained the requirement of a showing of a "material change" has its roots in principles of claim and issue preclusion.

"The provisions of the chancellor's decree with respect to the custody and maintenance of an infant are ... res judicata with respect to these matters and conclusive upon husband and wife so far as concerned their rights and obligation at the time of the passage of the decree. But the conditions which determine custody and care of the infant ... may change from time to time, and, so from considerations of policy and the welfare of the infant, a material alteration in the substantial circumstances will take the particular provisions of the decree with reference t[o] the custody and maintenance of the infant, out of the rule of res judicata and authorize a change, from time to time, of the decree in these respects." *Slacum v. Slacum,* 158 Md. 107, 148 A. 226 (1930).

The material change standard ensures that principles of res judicata are not violated. The requirement is intended to

preserve the stability for the child and to prevent relitigation of the same issues. *Domingues v. Johnson,* 323 Md. 486, at 498, 593 A.2d 1133 (1991).

■ The master understood and correctly applied the appropriate analysis. The court adopted the master's finding that "there had not been a significant change in the circumstances of [Mother's] life that would make it in the best interest of the child to be returned to the primary physical custody of [Mother]." This conclusion is supported by the record evidence, including the master's "concern about [Mother]'s sobriety as a result of the dilute specimen submitted to the Health Department, her casual attitude toward continued treatment and attendance at AA/NA meetings and her continued consumption of alcohol in casual settings."

The master went on to state:

> While [Mother] seems to have established a stable and appropriate living environment, the location of that home would cause substantial change to Madison as it would cause her to attend school in a different county. Further, while [Mother] has become employed at a stable job, she has only been there for a short time and, based upon history, it is appropriate that she establish a longer period of stable employment before it would be appropriate to consider having the child reside primarily with her.

The court found that these changes were not material changes affecting Madison's best interest that warranted a change in physical custody at this time. This does not mean that Mother could not, in the future, petition the court for modification of the Custody Agreement and demonstrate, to the satisfaction of the court, that her personal situation has reached a level of stability where an award of primary physical custody to her would be in Madison's best interest.[2]

---

2. We were advised, at oral argument, that such a petition has now been filed.

**V. Did the trial court err when it failed to exercise discretion by entering a _pendente lite_ order entered into by parties pending the conclusion of litigation as a final order intended to completely resolve the custodial arrangement of the minor child?**

Mother argues:

At the conclusion of the trial the Court entered the _pendente lite_ Agreement as a final order after denying [her] Complaint to Modify Custody without further consideration to numerous other factors typically included in a final custody order and the schedule of custody or visitation for the periods between May and August of each year. The Court's failure to even address these issues was an abuse of discretion and prejudicial to [her].

We perceive neither error nor abuse of discretion.

On August 21, 2007, the parties, after a settlement conference, reported that the matter was settled, placed that settlement on the record, and agreed to submit a proposed order to the court. However, they were unable to reduce that settlement to writing. Therefore, based on the record settlement, which was agreed to by both the attorneys and the parties, the court entered its own _pendente lite_ Order on February 8, 2008. That order stated that, "to the extent that any prior order(s) is not superseded by this Order, the prior Order remains in full force and effect." Therefore, the Custody Agreement remained in full force and effect, subject to the changes made to it by the _pendente lite_ Order. Because the Custody Agreement addressed visitation for the periods between May and August of each year, and the _pendente lite_ Order did not address such visitation, the provisions of the Custody Agreement concerning visitation for the periods between May and August remained in force. In sum, we shall affirm the judgment of the circuit court without prejudice to further proceedings between Mother and Father demonstrating a material change in circumstances.

**JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY AFFIRMED.  COSTS TO BE PAID BY APPELLANT.**