*In re: M.C.*, No. 1273, September Term, 2020.  Opinion by Nazarian, J., filed April 1, 2020.

**APPEAL AND REVIEW – MOOTNESS – EVASION OF REVIEW**

Exception to mootness doctrine is available in cases that present a recurring matter of public concern, which, unless decided, would continue to evade review, and applied to juvenile court orders that are almost always replaced by subsequent orders and, absent review, would negate a parent's ability to challenge them.

**CHILDREN IN NEED OF ASSISTANCE – MODIFICATION OF VISITATION – HEARING**

Juvenile Court abused its discretion and violated mother's due process rights when, based solely on conflicting proffers, it denied mother a hearing, which she requested, before modifying visitation. A hearing is not required if the disputed allegations are immaterial to whether the child is in serious immediate danger or if modification is required for the safety and welfare of the child. Here, a hearing was required because the disputed allegations related to the safety and welfare of the child.

Circuit Court for Montgomery County
Case No. 6-I-19-89

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1273

September Term, 2019

_____

IN RE: M.C.

_____

Fader, C.J.,
Graeff,
Nazarian,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: April 1, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

On June 10, 2019, the Circuit Court for Montgomery County found M.C. to be a child in need of assistance ("CINA") as part of an agreed disposition. Among the terms of the agreement, which the court embodied in its order, D.P. ("Mother") and the Montgomery County Department of Social Services ("Department") agreed that Mother would get *unsupervised* visitation with M as long as she tested negative for illicit substances. After the Department came to believe that Mother violated a protective order, it filed a Motion to Amend the June 10, 2019 order and proffered, in an unsworn memo from a social worker, that Mother violated a protective order, missed urinalyses, and tested positive for cocaine on one occasion. Mother opposed the motion, asked for a hearing, and proffered testimony that disputed the bases of the Department's memo. On August 15, 2019, the juvenile court granted the Department's motion without a hearing, and changed visitation from unsupervised to *supervised*. Mother argues on appeal that the court abused its discretion in changing her visitation terms without a hearing. We agree and reverse.

## I.    BACKGROUND

On May 20, 2019, the Department filed a petition alleging that M was a CINA. The Department filed an Amended CINA Petition on June 10, 2019, in which it proposed that Mother should have unsupervised, once-weekly visits with M "so long as [Mother] tests negative for illicit substances on an ongoing random basis."

On June 10, 2019, under Maryland Code (1973, 2013 Repl. Vol.) § 3-817 of the Courts & Judicial Proceedings Article, the Circuit Court for Montgomery County, sitting as a juvenile court, convened an adjudicatory hearing on the CINA petition. Before the hearing began, though, the parties came to an agreement:

[DEPARTMENT'S COUNSEL]: Yes, Your Honor, the parties have been through mediation and we have an agreement in this case that I think disposes of all issues. The first component is that the parties agree that had this case gone to trial that the Department would have proved the facts of the first amended petition by a preponderance of the evidence. I believe that both mother and father would choose not to make any admissions with regard to it. So, agree that the Department would have proof of these facts by a preponderance of the evidence.

Secondly, I believe we have an agreement that those facts would constitute these children as children in need of assistance. And thirdly, the dispositional recommendations, which are attached to the end of the first amended petition are also–have also been agreed to and collaboratively created by the [] parties. I believe that's our agreement.

*** 

[COUNSEL FOR MOTHER]: Yes, Your Honor. I have gone over the changes that the Department has made with my client and she agrees that these will be the facts that the Court will find by a preponderance and that we won't have a trial. We won't have witnesses. And the provisions in the recommendation for disposition will be the provisions that will be in the court order. And she's on the phone now. I've talked with her multiple times and [] if I could just talk to her on the record now?

THE COURT: Sure.

Mother, through her counsel, entered her agreement on the record:

[COUNSEL FOR MOTHER]: Okay. So, you had a chance to look through the first amended Child in Need of Assistance Petition?

[MOTHER]: Yes. I have.

[COUNSEL FOR MOTHER]: Okay. And you've seen the recommendations for disposition that–that last version?

[MOTHER]: Yes.

[COUNSEL FOR MOTHER]: Okay. And you understand that we're reaching an agreement so there will not be a trial, but we're trying to come back soon so we'll be back in September and then we'll have another hearing in October and another

hearing five months after that in April?

[MOTHER]: Okay. Sounds good.

[COUNSEL FOR MOTHER]: Okay. All right. So, my client agrees–

THE COURT: Well, I mean let's swear her in and if you could voir dire her under oath.

Mother was sworn in and the court conducted *voir dire*. Under the terms of the agreement, the court found M to be a CINA and ordered *unsupervised* once-weekly visitation with M "so long as [Mother] tests negative for illicit substances on an ongoing random basis." The court memorialized its ruling in a written order.

On July 26, 2019, the Department filed a motion to amend the disposition order to change Mother's visitation to supervised. The Department contended that Mother had violated a protective order, failed to complete urinalyses in the weeks of May 26, June 2, June 9, June 30, and July 7, 2019, and tested positive for cocaine on May 21, 2019. The Department supported its motion with an unsworn memorandum from a social worker listing the various violations; the memorandum attached a police report describing the protective order incident, but included no other primary source material.

Mother responded on August 12, 2019 by filing an opposition to the Department's motion and a request for discovery. She asked the Department to disclose the actual drug test results and expert testimony on which the Department was relying, and asked the court to address these matters at the Review Hearing on September 10, 2019. On August 15, 2019, the juvenile court granted the Department's motion to amend the disposition order without a hearing, making Mother's visits *supervised*.

On September 10, 2019, the court held a status hearing at which Mother renewed

her request to challenge the Department's drug testing allegations:

> [COUNSEL FOR MOTHER]: We filed an opposition to the Department's Motion to change the visits with [M] to supervised and we asked for a hearing. And Your Honor signed the order changing the visits to supervised without a hearing, just based on their motion and I guess denied us our hearing and that's why we would like a hearing.
>
> We have never received the ur[i]nalysis . . . which I expect will show that they're not something that you should use for legal purposes. That there should be confirmatory testing. My client, I believe will testify that she's not used cocaine. That she—I think the social worker will testify that my client is completely appropriate at every visit. And my client wants to go back to the court order that we all agreed to at the beginning which is that her visits with [M] would be unsupervised. So, we would like a contested hearing on that. I know Your Honor has other hearings today.
>
> THE COURT: Yeah, we can't do it today.
>
> [COUNSEL FOR MOTHER]: Yeah, so we may need to reset and schedule this in.
>
> THE COURT: Well, [] there's a 3-816.2 review hearing set in October. But that's only set for one hour. I don't know whether that could be expanded.
>
> [COUNSEL FOR MOTHER]: We [] would like to not wait until October if we could find an earlier date, Your Honor.
>
> THE COURT: How long do you think you'd need?
>
> [COUNSEL FOR MOTHER]: Well, my client would testify. I [] would ask that Your Honor grant my request that was in my opposition for the Department to provide me with discovery about their claims. Maybe we could deal with that. Order for discovery regarding toxicology testing. So, the Department has made some claims about my client being positive for cocaine. She says she hasn't used cocaine and we don't even have the ur[i]nalysis results at all. We just have their summary in their report, in their motion. I don't think their motion had the results attached but let me check. Because I haven't looked at it for a minute. Oh, I'm sorry, Your Honor. No, no it has a police report, but no urine results.

4

The court then denied Mother's motion:

> THE COURT: Okay. Well, I mean to the extent [Counsel for Mother's] oral comments constitute a motion for me to reconsider my prior order of August 15th, that's denied. . . . [O]bviously the issue of whether visitation should continue to be supervised can be addressed at the next hearing in October. And of course, that's going to take place after, I hope, I guess with the indicated date of her disposition of the criminal charges is and maybe we'll know more by then about that. And [] that might be relevant as well to what we should be doing.
>
> [COUNSEL FOR MOTHER]: Your Honor, I think it was a little confusing. I wasn't quite sure that [Counsel for the Department] was saying when she said that we agreed at the adjudication. What happened was the agreement was that my client would be unsupervised with [M].
>
> THE COURT: No, I know that.
>
> [COUNSEL FOR MOTHER]: That was the court order. The court order was changed without a hearing with just mere allegations, no proof at all of [] the ur[i]nalysis and that's what we're asking for. And so, I would ask that Your Honor grant my request for the order for discovery that was in my opposition to the motion to change the visitation.
>
> THE COURT: All right.
>
> [COUNSEL FOR MOTHER]: Thank you.
>
> THE COURT: So that's denied. Anything further?

The court then ruled that M remained a CINA and reaffirmed that visitation between Mother and M would be *supervised*. Mother noted this timely appeal.

We supply additional facts as necessary below.

## II.    DISCUSSION

Mother raises two issues on appeal.[1] In this case involving a CINA, we are asked to

---

[1] Mother states the Questions Presented as follows:

> 1.  Did the juvenile court abuse its discretion and violate Ms.

5

decide whether the juvenile court abused its discretion when, based on conflicting proffers, it changed Mother's visitation order from *unsupervised* to *supervised* without holding a hearing. Under the circumstances of this particular case, we hold that the juvenile court abused its discretion, and reverse, and therefore don't reach the second issue.

## A.     The Appeal Is Moot, But We Will Address It.

Before we address the merits, though, the Department filed a motion to dismiss the appeal as moot. We ordinarily do not render judgment on moot questions. *LaValle v. LaValle*, 432 Md. 343, 351 (2013). A case is moot when "past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might enter would be without effect." *Hayman v. St. Martin's Evangelical Lutheran Church*, 227 Md. 338, 343 (1962). The order at issue here is no longer the operative order because after a hearing on November 15, 2019, the juvenile court entered a superseding order that expanded visitation to supervised at a minimum of twice weekly—one weekday for a minimum of one hour and one weekend day for a minimum of three hours with an approved relative.

Even so, we can consider moot questions "where a case, while technically moot, presents a recurring matter of public concern which, unless decided, will continue to evade

---

P.'s due process rights when it changed her visitation with M.C. from unsupervised to supervised without providing Ms. P. a contested hearing?

2. Did sufficient evidence support the juvenile court's order changing Ms. P.'s visitation with M.C. from unsupervised to supervised?

review." *Office of the Pub. Def. v. State*, 413 Md. 411, 423 (2010). And because the statute requires juvenile courts to conduct review hearings in CINA cases every six months, orders like this will "almost always be replaced by subsequent orders before" the appellate courts will be able to review them. *In re Justin D.*, 357 Md. 431, 444 (2000); *see* Maryland Code (1973, 2013 Repl. Vol., 2019 Supp.) § 3-816.2 of the Courts & Judicial Proceedings Article (requiring the court to conduct a status review of "each child under its jurisdiction within 6 months after the filing of the first petition . . . and at least every 6 months thereafter"). This will largely preclude appeals from juvenile court orders of this type in the normal course, which, as in this case, would have "the perverse effect of negating [a parent's] ability to further challenge" them. *In re Ashley S.*, 431 Md. 678, 706 (2013). Accordingly, and because Mother raises important due process questions in her appeal, we will exercise our discretion to review the juvenile court's August 15, 2019 visitation order.

**B.      Visitation Should Not Have Been Changed Without A Hearing.**

Now, on to the merits. During oral argument, the parties offered conflicting interpretations of the June 10, 2019 order. We resolve *first* those conflicting interpretations. We hold *next* that under the circumstances of this case, the Department's proffer failed on its own to meet the burden of proof required to change the visitation order, and the juvenile court abused its discretion by declining to hold a hearing.

In CINA proceedings, we apply three different but interrelated standards of review. *First*, when "the appellate court scrutinizes factual findings, the clearly erroneous standard applies." *In re Adoption of Cadence B.*, 417 Md. 146, 155 (2010) (*quoting In re Yve S.*, 373 Md. 551, 586 (2003)) (cleaned up). *Second*, if the trial court "erred as to matters of law,

7

further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless." *Id. Third*, when the ultimate conclusion of the trial court is "founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the [court's] decision should be disturbed only if there has been a clear abuse of discretion." *Id.* An abuse of discretion occurs when "no reasonable person would take the view adopted by the trial court" or when the court acts "without reference to any guiding rules or principles." *In re Yve S.*, 373 Md. at 583 (cleaned up).

### 1. The June 10, 2019 visitation order was unambiguous.

At the threshold, we must define the starting point: the visitation terms of the June 10, 2019 order which, despite the fact that they were agreed and the language seems straightforward, the parties construe very differently. Here are the words themselves, broken out into separate sections for Mother and Father:

> **ORDERED**, that [Mother] shall participate in the following services under the direction of the Department:
>
> - Have visitation with [M], **unsupervised once weekly, so long as [Mother] tests negative for illicit substances on an ongoing random basis**;
> - Undergo a substance abuse evaluation, or provide the evaluation done by PTSU, and follow all recommendations;
> - Submit to random urinalysis, not to duplicate PTSU conditions;
> - Participate in one-on-one parenting coaching; and
> - Sign authorizations to release information from all current providers after consultation with her attorney; and it is further
>
> **ORDERED**, that [Father] shall participate in the following services, under the direction of the Department:

8

- Have visitation with [M], **supervised once weekly, minimum two hours per visit, not to include overnight visits, if [Father] tests negative for illicit substances on an ongoing random basis.** Supervision can transition to the grandparents by agreement of the parties. It is anticipated that [Father] will test positive for cannabinoids for the next 30 days, but after that will need to test negative for substances;

- Undergo a substance abuse evaluation and follow all recommendations;

- Participate in parenting education/counseling which may include one-on-one parenting coaching; and

- Sign authorizations to release information from all current providers after consultation with his attorney[.]

(emphasis added).

The Department reads the order as placing Mother and Father on equal footing. In its reading—and notwithstanding the words "unsupervised" and "so long as"—Mother's begins with *supervised* visitation and stays supervised *until* she develops a track record of testing tests negative for illicit substances. Mother, on the other hand, reads the order to allow her unsupervised visitation so long as she passes random drug tests. We interpret court orders the same way we interpret contracts:

> [C]ourt orders are construed in the same manner as other written documents and contracts, and if the language of the order is clear and unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used. Ambiguity exists, however, when read by a reasonably prudent person, it is susceptible of more than one meaning. We have stated that language can be regarded as ambiguous in two different respects: 1) it may be intrinsically unclear . . . ; or 2) its intrinsic meaning may be fairly clear, but its application to a particular object or circumstance may be uncertain. Thus, a term which is unambiguous in one context may be ambiguous in another. If ambiguous, the court must discern its meaning by looking at

9

the circumstances surrounding the order to shed light on the ambiguity, including the motion in response to which it was made.

*Taylor v. Mandel*, 402 Md. 109, 125–26 (2007) (cleaned up); *see also Green v. Green*, 188 Md. App. 661, 679–80 (2009).

Here, the language of the June 10, 2019 order is "clear and unambiguous, [and] we will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." *Green*, 188 Md. App. at 680. On its face, this agreed order treats Mother and Father differently: Mother was to have *unsupervised* visitation as long as she tested negative for illicit substances, and Father was to have *supervised* visitation if he tested negative for illicit substances. And the context in which the order arose lends support to this plain-language reading. As part of the court order, Mother also was allowed *supervised* visits with her older child (M's half-sister, L.P., who is not a party to this case), and during the hearing, the court distinguished the supervised and unsupervised visits between the siblings as well:

> THE COURT: A CASA shall be appointed for [L]. [Mother] shall participate in the following services under the direction of the Department: Visitation with [M] **unsupervised** once weekly so long as [Mother] tests negative for illicit substances on an ongoing random basis. Visitation with [L] shall be **supervised** once weekly. Did you mean **unsupervised** for [M]?
>
> [COUNSEL FOR DEPARTMENT]: No, **unsupervised** for [M], yes.
>
> THE COURT: Okay.
>
> [COUNSEL FOR DEPARTMENT]: And it's **supervised** for [L].
>
> THE COURT: Okay. So, visitation for [L] **supervised once**

10

> **weekly** a minimum of one hour if [Mother] tests negative for
> illicit substances on an ongoing random basis. . . .

Even more telling is that the Department, in its memo to the court, asked specifically to change visitation from *unsupervised* to *supervised*, a change that wouldn't be necessary if the Department's current reading were correct:

> Because of the serious nature of the June 30, 2019 incident, which highlights [Mother's] unpredictable behavior, the Department is concerned that *unsupervised* visits would present a risk to the child, it is respectfully recommending that all visitation between [Mother] and [M] now be *supervised*, under the direction of the Department, minimum one time per week for one hour.

Under the plain and ordinary meaning of the agreement embodied in the June 10, 2019 order, Mother's visits with M were to be *unsupervised* unless she failed random drug tests or the court changed the terms.

> 2. *The circuit court abused its discretion when it changed visitation, without a hearing, based solely on conflicting proffers.*

The starting point matters, because it drives the central issue of this appeal: who bore the burden of proof in connection with the Department's motion to amend visitation? The Department argues that Mother carried the burden of proof in this case and that the circuit court was not required to give Mother a hearing. The Motion to Amend attached a memo to the juvenile court from a social worker that described the bases for the motion:

> [Mother] violated a Protective Order on October 2018, May 2019 and June 30, 2019 – the last being after Adjudication/Disposition in this case. She was charged with 2nd Degree assault with regard to the June 30, 2019, violation; please see attached police report describing the June 30, 2019 incident.
>
> [Mother] has had three visits post Adjudication/Disposition –

11

on June 13, June 19, and June 26, 2019. She submitted to urinalysis on five occasions – one of which tested positive for cocaine on May 21, 2019. [Mother] failed to complete her urinalysis the weeks of May 26, June 2, June 9, June 30, July 7, 2019. She was incarcerated from July 1 through July 16, 2019 – and thus missed urinalysis and visits. She tested positive for Amphetamines but has prescription for Ritalin.

As it states, the memo attached a copy of a police report from the June 30, 2019 incident, but wasn't sworn and didn't attach any other supporting materials.

Mother opposed the Department's motion and countered the Department's allegations with proffers of her own:

6. If given a hearing, mother will testify that the Department has not provided [M] and her mother with a single unsupervised visit since June 10.

7. Mother will testify that the pending charges and the claims outlined in the Police Report will be shown to be false because she is innocent of those charges. Criminal hearings on these matters are currently set for August 12 and August 27, 2019.

8. Mother will testify that although she wasn't able to complete urinalysis while in jail she completed all urinalysis and followed all of the Department's recommendations before she was put in jail on the false charges, and after she was released.

9. Mother will testify that she is participating in substance abuse treatment at Metro Counseling, is attending the Abused Persons Program, and participates in weekly urinalysis at 255 Rockville Pike.

10. Mother will testify that she attends NA meetings two times per week and has been clean since November 2018.

11. Mother will testify that she was recently hired and began work as a server at the Silver Diner at RIO.

12. Mother will testify that the dip drug tests are inaccurate and she observed on one occasion the nurse dipped the test into one container of urine where the results came up positive for substance, the nurse then poured the urine into another container and the results came back negative. Mother requests expert testimony and all lab results regarding all urine testing

relied on by the Department.

The Department argues that once it came to believe that Mother failed to follow the conditions of the court order and sought to change the terms of the court order, its proffer shifted to Mother the burden of proving compliance with the terms of the June 10 order. In addition, the Department says no hearing was required because under Maryland Rule 11-116(a), "[a]n order of the court may be modified or vacated if the court finds that action to be in the best interest of the child or the public." And under Maryland Rule 11-116(c), the court may do so "without a hearing."

"[A]llocation of a burden of proof is a question that is determined by considerations of the circumstances of a particular case," and "the general practice is to allocate the burden of proof to the party asserting the affirmative of an issue, or seeking to change the status quo." *Garrett v. State*, 124 Md. App. 23, 28 (1998). In this instance, the Department sought to change the *status quo*, so it bore the burden of proof. The Department's motion contained allegations and a proffer that, if proven, could justify a decision to modify visitation. But they did not suffice in themselves to compel the relief the Department sought. Mother then filed a timely response that, like the Department's motion, proffered facts that, if proven, could justify a decision to deny relief, but were insufficient in themselves to compel such a decision. When the circuit court resolves conflicting proffers and is "presented with a request by counsel for the parent or parents to be allowed to present witnesses . . . as a threshold matter, the court should ask counsel to denote the allegations asserted to be in dispute." *In re Damien F.*, 182 Md. App. 546, 583 (2008). And a court abuses its discretion by not receiving testimony as to material, disputed allegations when requested by a party

unless the disputed allegation is immaterial to whether the child is in serious immediate danger or if modification is required for the safety and welfare of the child. *Id.* at 584 ("We hold that, unless the disputed allegation is probatively inconsequential to a determination of whether placement is required to protect a child from serious immediate danger or that removal from the home is necessary to provide for the safety and welfare of the child, the court must receive testimony as to the material, disputed allegations and a denial of the request to produce witnesses, in that instance, is an abuse of discretion.").

The Department's allegations raised a substantial question as to the safety and welfare of M during unsupervised visitation, but they were disputed, and Mother requested a hearing to present testimony and witnesses. Under the circumstances, and particularly in light of the Department's inverted reading of the visitation terms in the first place, we hold that the juvenile court should not have modified Mother's visitation with M without a hearing, and that Mother's rights to due process were violated when visitation was modified without one. *See In re Maria P.*, 393 Md. 661, 679 (2006) (juvenile court violated parent's due process right when it excluded the parent from the proceedings without first finding exclusion was appropriate).

> **JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. MONTGOMERY COUNTY TO PAY COSTS.**

14